Wesley D. Felix (Utah Bar No. 6539)
Andrew G. Deiss (Utah Bar No. 7184)
Brenda E. Weinberg (Utah Bar No. 16187)
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, Utah 84101
Tel: (801) 433-0226
adeiss@deisslaw.com
wfelix@deisslaw.com
bweinberg@deisslaw.com
*Attorneys for the Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROSA DiTUCCI, STEVEN R. LaROZA, DEBRA A. LaROZA, BRUCE I. ROSE, MAUREEN A. ROSE, SANFORD ROBERTS, HELAINE B. ROBERTS, RUSSELL E. HERTRICH, FRED JACOB, EDWARD A. HENNESSEY, PAMELA A. CAPLINGER, on behalf of the ESTATE OF JAMES M. CAPLINGER, JR.; RUSSELL E. HERTRICH REVOCABLE TRUST; SANFORD ROBERTS REVOCABLE TRUST;HELAINE B. ROBERTS REVOCABLE TRUST; THE FRED JACOB LIVING TRUST; EDWARD A. HENNESSEY 2001 REVOCABLE LIVING TRUST; CAMAC, INC., and BLUSH PROPERTY, LLC, <br><br> *Plaintiffs*, <br><br> vs. <br><br> CHRISTOPHER J. ASHBY, SCOTT RUTHERFORD, ROCKWELL DEBT FREE PROPERTIES, INC., ROCKWELL TIC, INC., et al., <br><br> *Defendants*. | Case No. 2:19-cv-00277 <br><br> **MEMORANDUM IN OPPOSITION TO SCOTT RUTHERFORD'S MOTION TO DISMISS** <br><br> The Honorable Tena Campbell |

1

Plaintiffs Rosa Ditucci et al. (hereinafter, "Plaintiffs"), through undersigned counsel, respectfully submit their Memorandum in Opposition to Defendant Scott Rutherford's Motion to Dismiss.

## INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") alleges that Defendant Scott Rutherford ("Rutherford"), an unlicensed broker, sold unregistered securities relating to Noah Corporation ("Noah's") to Plaintiffs.[1] Plaintiffs further allege that the investment was "a Ponzi scheme; that is, a fraudulent scheme in which the business pays returns to its investors that are financed, not by the success of the business, but instead with money acquired from later investors." *Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1209 (10th Cir. 2019) (simplified). Rutherford admits that "Rockwell paid Rutherford a small finder's fee or commission." Dkt. No. 61 at 3. In this case, the "small" fee was approximately $100,000, or approximately 3% of the investments Rutherford successfully solicited.

Rutherford sold these securities on the basis of multiple misrepresentations and omissions directed to investors directly or indirectly through sales materials created by Rutherford and others. The sales materials stated that Noah's was a profitable business with a spotless record reliably paying market rate lease payments to investors from the profits of the business. On the basis of these, and other, misrepresentations, investors purchased tenant-in-common ("TIC") interests in what they believed was land and a completed Noah's event center accompanied by a twenty (20) year lease guaranteed by Noah's.

---

[1] The relevant portions of Plaintiffs' FAC are described in Rutherford's motion to dismiss. *See* Dkt. No. 61 at 4-10.

In fact, Noah's lease payments were grossly in excess of market rates, as the cost of the land and building upon which the lease rates were calculated included millions of dollars skimmed off the top as commissions by Defendants Rockwell, Hamrick, Rutherford and others. As a result of, among other things, the above-market lease payments, Noah's was insolvent by at least 2017. Indeed, Noah's was likely never profitable, and it remained in business solely through the expedient of using funds obtained from new investors to make lease payments to existing investors. These facts were known to Rutherford when he sold the unregistered Noah's securities. On information and belief, Rutherford's 3% commission on sales resulted in hundreds of thousands of dollars in commissions.[2]

Rutherford moves to dismiss all claims against him arguing that the FAC does not allege any misrepresentations or omissions and does not allege that Rutherford knew his representations were false when he made them. These assertions are false. The FAC, which Rutherford describes as "astounding" in its length, is replete with specific allegations as to the misrepresentations made by Rutherford. Rutherford also argues that the FAC must be dismissed because Plaintiffs do not state the exact date and time of each misrepresentation made by Rutherford to Plaintiffs. But federal law does not require that multiple misrepresentations in the context of a complex Ponzi scheme be identified by an exact date. Contrary to Rutherford's arguments, Plaintiffs have plead Rutherford's fraudulent misrepresentations with sufficient specificity to survive a motion to dismiss.

---

[2] It is somewhat disingenuous, then, that Rutherford claims that, because he was not employed by and had no interest in Noah's, "he would have had no incentive to assist Noah's in allegedly misusing or misappropriating funds." Dkt. No. 61 at 22. While possibly accurate as stated, it is clear that Rutherford had a substantial motive and incentive to mislead investors regarding Noah's finances and its actual use of funds when he profited handsomely from every sale of Noah's securities.

In addition, Rutherford claims Plaintiffs' unjust enrichment claim must be dismissed, because Rutherford did not receive a direct benefit from the fraud. Yet Rutherford admits, that he received a finder's fee/commission in connection with his sale of Noah's securities. Surely, this qualifies as a direct benefit, and Rutherford's motion to dismiss Plaintiffs' unjust enrichment claim should be denied.

Finally, Rutherford misconstrues Plaintiffs Section 12(a)(1) claim. Rutherford contends that Plaintiffs have not plead a 12(a)(2) claim, and they have not. Plaintiffs allege that Rutherford was an unlicensed broker who sold unregistered securities. The FAC clearly states the elements of a 12(a)(1) claim which Rutherford ignores.[3]

The FAC alleges that Rutherford participated in the creation of the sales materials used to defraud the Plaintiffs. The FAC alleges that Rutherford knew, or was reckless in not knowing, that the representations in the sales materials were false and omitted information that made the representations contained in the sales materials materially misleading. The FAC further alleges that Rutherford made the same or similar misrepresentations directly to Plaintiffs, the Roses, and that he received a substantial commission when he successfully persuaded the Roses to buy Noah's securities. These allegations are more than adequate to state a claim for fraud, unjust enrichment, conspiracy and aiding and abetting against Rutherford. Accordingly, the Court should deny Rutherford's motion to dismiss.[4]

---

[3] Rutherford admits, for purposes of his motion, that Plaintiffs have asserted a proper claim under state Blue Sky Laws for selling securities without a license to do so.

[4] Plaintiffs will be moving to amend their complaint to add detail obtained during Defendant Bowser's examination and to clarify and streamline their allegations.

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement need not include "detailed factual allegations" but must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). When evaluating a complaint's sufficiency, "[a]ll allegations of material fact are taken as true and are construed in the light most favorable to [the plaintiff]." *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

To survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2019). Moreover, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (cited favorably by *Rupp v. Pearson*, 658 Fed. Appx. 446 (10th Cir. 2016)). Importantly, "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

**ARGUMENT**

**I.   Plaintiffs State a Claim for Unjust Enrichment.**

Rutherford contends that Plaintiffs fail to allege Rutherford was conferred a benefit, and therefore, that Plaintiffs fail to plead the elements of unjust enrichment. *See, e.g.*, Dkt. No. 61, at

28. Nevertheless, Rutherford admits, for purposes of the motion, that he received a commission for the sale of securities to Plaintiffs. Dkt. No. 61 at 28. Thus, not only do Plaintiffs allege that Rutherford received a direct benefit, but Rutherford acknowledges that this allegation is true. Rutherford's motion to dismiss Plaintiffs' unjust enrichment claim must, therefore, be denied.

## II.     Plaintiffs Allege Facts Sufficient to Support their Fraud-Based Claims.

Rutherford claims that he made no misrepresentations, and that "Plaintiffs have failed to plead facts showing that Rutherford made any false and misleading statements, or that he misled Plaintiffs". Dkt. No. 61 at 21. But Rutherford's own citations to the FAC demonstrate that this is false. First, the FAC alleges that Rutherford substantially participated in the creation of marketing materials disseminated to Plaintiffs containing multiple misrepresentations and omissions. FAC ¶¶ 71-79.

The Tenth Circuit has recognized the group pleading doctrine, a judicially created doctrine which allows, in the appropriate context, a plaintiff to plead a defendant's participation in a group scheme to defraud utilizing group-published documents. *See, e.g., Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997); *Medina v. Catholic Health Initiatives*, No. 1:13-cv-01249-REB-KLM 2017 U.S. Dist. LEXIS 6141, 2017 WL 219314, *3 (D. Colo. Jan. 17, 2017) (group pleading in the context of the joint actions of a committee) (*cited in Strong v Cochran*, No. 2:14-cv-788-TC, 2017 U.S. Dist. LEXIS 170073, *19-20  (D. Utah October 13, 2017); *see also Ouaknine v MacFarline* 897 F.2d 75, 80 (2d Cir. 1990) (reference to offering memorandum satisfies 9(b)'s requirement to identify time, place, speaker and content of misrepresentation where defendants are insiders or affiliates).

In addition, it is now clear that any defendant who disseminates false or misleading statements, whether or not he "made" the statements is subject to liability under rule 10b-5 and

6

the relevant statutory provisions of the federal securities laws. *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019). Because Rutherford disseminated the false statements contained in the sales materials, he is liable for fraudulent misrepresentation under the securities laws regardless of whether the authorship of individual misstatements can be attributed to him. *Id*. at 1101.

Second, Plaintiffs allege at some length the specific misrepresentations and omissions disseminated by the Rutherford directly through specific individual sales pitches, and indirectly through participation in the creation of marketing materials. Marketing materials created in part by Rutherford represented that Noah's was stable with a lengthy history of profitability, when in fact, Noah's was insolvent with a net operating loss of some $57 million. FAC ¶¶ 71-79, 106. The FAC alleges both that the marketing materials were jointly created, and that the Defendants were "close business associates" who jointly coordinated the fraudulent scheme. *See, e.g.*, FAC ¶¶ 71-79. The investors were told that each Noah's property was an independent investment and that for Carmel, its profitability was solely dependent upon the revenues and expenses associated with the Carmel, Indiana site. FAC ¶¶ 72, 104. This was false.

Investors were told that revenues from the individual venues were more than sufficient to pay the guaranteed lease payments from Noah's. FAC ¶ 106. This was false; and Rutherford knew, or was reckless in not knowing, that lease payments could only be paid by using money from new investments to pay the lease obligations on old investments. FAC ¶¶ 74-79. Rutherford knew that outrageous commissions were being paid to individuals selling Noah's investments, and that he would personally receive a commission of approximately 3% on any sales, and Rutherford either misrepresented or failed to disclose this fact to investors. FAC ¶¶ 79, 87. Finally, Rutherford knew, or was reckless in not knowing, that the market value of the

Noah's properties was far less than the sales price to investors, and that the guaranteed lease payments were in amounts far in excess of fair market value and unsustainable. FAC ¶¶ 11-12.

In the context of a complex financial fraud in which Rutherford conspired with other Defendants to mislead investors into putting their money into a Ponzi scheme, the Complaint, which includes 437 numbered allegations, more than adequately pleads facts sufficient to put Rutherford on notice of the specific fraudulent misrepresentations he made to the Roses and to other investors through the sales materials he materially participated in creating. Rutherford may argue, as he does in his motion, that all of his representations were true and that Plaintiffs just made an unfortunate investment. Dkt. No. 61 at 17. But this is a factual dispute not to be resolved on a motion to dismiss. Because Plaintiffs have plead numerous specific material misrepresentations, Rutherford's motion to dismiss Plaintiffs' fraud-based claims, including their Florida Blue Sky claims, should be denied.

### A.  Plaintiffs Adequately Plead the Time and Place of Rutherford's Misrepresentations.

Rutherford claims that Plaintiffs do not plead the who, what, when and where of the alleged misrepresentations. *See* Dkt. No. 61 at 15 (citing *United States ex rel. Lacy v. New Horizons, Inc.*, 384 F. App'x 421, 434 (10th Cir 2009)). But Plaintiffs do allege that Rutherford stated to and disseminated to the Roses misrepresentations regarding the profitability and sustainability of Noah's, among other things, during the period of time Rutherford pitched Noah's securities to the Roses – from May of 2016 through July of 2018 when Rutherford finally persuaded the Roses to purchase Noah's securities. And the FAC alleges in some detail both the misrepresentations made to the Roses orally and those contained in the sales materials sent by Rutherford to the Roses (and to other investors). FAC ¶¶ 187-202. This is enough specificity to withstand 9(b) scrutiny.

Contrary to Rutherford's argument, a plaintiff need not recall the exact time and place of each fraudulent misrepresentation. *See, e.g., Hockman v. I-Flow, LLC*, 2017 U.S. Dist. LEXIS 214949 (Dist. of Colo., Dec. 7, 2017) (stating that at the pleading stage a general identification of the time period was adequate) (citing *Boyd v. Stryker Corp.*, NO. 2:11CV44 DAK, 2011 U.S. Dist. LEXIS 111663 (D. Utah Sep. 28, 2011)).

### B. Plaintiffs Have Plead Facts Supporting a Strong Inference of Scienter.

In securities fraud actions a plaintiff must plead facts that give rise to a "strong inference that the defendants acted with the intent to deceive" investors or with a "reckless disregard of a risk" that investors might be misled. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1147 (10th Cir. 2015). A strong inference is an inference that is "at least as compelling" as any competing inference. *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). A court must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201–02 (10th Cir. 2015), quoting *Tellabs*, 551 U.S. at 322.

Rutherford argues that Plaintiffs have not plead scienter, because the facts alleged in the FAC show that "Rutherford's representations were consistent with the facts as alleged by Plaintiffs." Dkt. No. 61 at 21. To the contrary, Plaintiffs have alleged numerous facts inconsistent with the representations made by Rutherford in selling Noah's investments. Rutherford represented that: 1) the Carmel property was sold at market value; 2) that the rents to be received reflected market rates; 3) that Noah's properties had been consistently profitable; 4) that Noah's Carmel would generate sufficient revenue to service $438,000 in annual rents; and 5)

9

that the Carmel investment would qualify as a valid 1031 exchange. FAC ¶¶ All of these representations were false. In addition, Rutherford intentionally omitted material information including: 1) that between 16% and 20% of the purchase price of the investments would be skimmed off the top as commissions or referral fees; 2) that Rutherford would personally receive 3% in commission for each sale; 3) that as of the beginning of 2017 Noah's was delinquent on its property tax payments for other venues; and 4) that at least by 2017 Noah's could not pay debts as they became due without siphoning funds from new investors. Finally, Plaintiffs allege that Rutherford also sent the Sales Package to the Roses, which contain numerous false or misleading statements. FAC ¶¶ 188, 330. By disseminating the Sales Package, Rutherford made the statements therein. *See Lorenzo v. S.E.C., ibid*.

Rutherford's statements are to be considered false, if a reasonable person would have understood them to be "inconsistent with the facts on the ground." *Nakkhumpun*, 782 F.3d at 1148 (*citing In re Level 3 Commc'ns, Inc. Sec. Litig*., 667 F.3d 1331, 1343 (10th Cir. 2012)). And there is no reading of Rutherford's representations that can be understood as consistent with the material facts as alleged by the FAC – that Noah's was never profitable, that the revenues from one venue were commingled with others, that the enterprise could not survive without misappropriating funds from new investors to pay old investors, that Noah's was insolvent and that the massive commissions taken by sellers of the Noah's securities made it nearly impossible for the investments ever to be profitable.

In this circumstance, where Rutherford knew or recklessly disregarded information available to him through his collaboration with Defendants Bowser and Noah's, Plaintiffs' have adequately plead scienter. "Scienter is not limited to situations in which a defendant acted with the primary purpose of misleading [investors]; scienter also exists when a defendant acted with a

reckless disregard of a substantial likelihood of misleading investors. *Id.,* at 1150. In this case, Rutherford either knew that he was lying to investors about the economics of Noah's, or he was reckless in failing to obtain any contrary information when that information was easily available. Rutherford had worked for several years with Rockwell and had sold Noah's investments since at least 2015. He participated in putting together sales materials for Noah's investments which he distributed. And he communicated with and had regular access to Defendant Bowser in conjunction with the marketing of Noah's securities. Accordingly, Plaintiffs have plead sufficient facts indicating that Rutherford was at least reckless in disregarding the risk that his statements would mislead investors in Noah's securities.

Finally, Rutherford contests Plaintiffs' scienter inference on the ground that Rutherford had no motive to deceive Plaintiffs when he was "not employed by and had no interest in Noah's." This argument is misplaced. Rutherford worked for Rockwell whose principal business was selling Noah's event centers as TIC investments. Rutherford earned approximately $100,000 just for his referral of a few investors in Carmel. Certainly, this belies Rutherford's claim that he had no incentive to assist Noah's. Dkt. Np. 61 at 22. Moreover, the argument is legally "invalid because scienter allegations may suffice even without a motive." *Tellabs*, 551 U.S. at 325 (2007).

### III. Plaintiffs Have Plead a Claim for the Sale of Unregistered Securities under Section 12(a)(1) of the Securities Act of 1933.

Plaintiffs plead a cause of action for the sale of unregistered securities under Section 12(a)(1) of the Securities Act. 15 U.S.C. § 77e(a) and (c). The Seventh Cause of Action in the FAC alleges that Defendants "unlawfully made use of means or instruments of communication in interstate commerce or of the mails for the purpose of offering, selling, or delivering unregistered securities." FAC ¶ 342. Rutherford concedes that he does not address Plaintiffs'

claim "to the extent it is asserted under subsection (a)(1)." Dkt. No. at 24 fn. 4. Thus, Rutherford's Section 12 argument should be disregarded.

### IV. Plaintiffs Have Plead a Claim for Breach of Fiduciary Duty.

"Breach of fiduciary duty claims generally require proof of four elements: the existence of a fiduciary relationship (such as attorney-client, physician-patient, or insurer-insured); breach of the fiduciary duty; causation, both actual and proximate; and damages." *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 52 (simplified). "A fiduciary relation exists between two persons when one of them is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation." Restatement of Torts § 874, cmt. a (1979). Utah Courts have generally recognized that fiduciary relationships "implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332 (Utah 1990), quoting *Denison State Bank v. Madeira*, 230 Kan. 684, 691 (1982). "A fiduciary is in a position to have and exercise and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." *Id*. "[T]here must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other." *Id*.

Plaintiffs allege that Defendants are sophisticated promotors and real estate brokers and that Plaintiffs were relatively unsophisticated investors with little knowledge of or experience in the commercial real estate business. FAC ¶¶ 1, 4. The passive nature of the 1031 investment

12

prohibited individual TIC investors from participating in the management of the property to ensure that the investment is passive. FAC ¶ 69. Plaintiffs were insulated from any and all management functions, thereby protecting the passive nature of the TIC investment for tax purposes. FAC ¶ 241. Plaintiffs were ordinary people comprised of mostly older, retired individuals. FAC ¶¶ 6-7. Plaintiffs also allege that they reposed absolute trust and confidence in Defendants to advise, counsel, and protect them; that Defendants also had access to superior and exclusive knowledge about Noah's that Plaintiffs did not have, such as information about the financial performance of Noah's and the flow of funds to and from Noah's; that Defendants were Plaintiffs' agents; and Defendants accepted that trust and confidence from Plaintiffs. FAC ¶¶ 302-306.

Rutherford argues that he owed no fiduciary duty because, as an employee of Rockwell, a broker for the seller did not owe fiduciary duties to a potential purchaser. Dkt. No. 61 at 27. The authority cited by Rutherford only concerns licensed real estate professionals. *See, e.g., Hermansen v. Tasulis*, 2002 UT 52, ¶ 22, 48 P.3d 235, 241 (holding that a real estate agent representing a seller does not owe fiduciary duties to prospective purchasers). Plaintiffs do not allege that Rutherford is a licensed real estate agent, which owes a statutory duty to the public. Moreover, this was not a simple real estate transaction with just a real estate purchase contract; it involved TIC interests, compliance with complex IRS code provisions to successfully defer capital gains taxes, funds that exchanged hands multiple times, execution of multiple agreements, and commissions of $600,000 to $1,000,000 on a $6.26 million purchase price, far in excess of the standard 3–6% real estate commission. FAC ¶¶ 7, 67-68, 79, 115. Considering all of these allegations together, a fiduciary relationship existed between Rutherford and Plaintiffs.

Plaintiffs allege that Rutherford breached his fiduciary duty by misappropriating funds, concealing the misappropriation, failing to alert Plaintiffs to the misappropriation, making material misrepresentations and omissions, both in the Sales Package and directly to Plaintiffs. FAC ¶¶ 307, 329-332. Finally, Plaintiffs adequately plead causation by alleging that Rutherford's misrepresentations and omissions were not only material, but the information was critical to the Plaintiffs' evaluation of whether to purchase Noah's Carmel. FAC ¶ 337. Plaintiffs would not have invested in the TIC Interests had they known the true facts. *Id*. Because Plaintiffs have plead the existence of a fiduciary relationship, breach, and damages caused thereby, Rutherford's motion to dismiss Plaintiffs' breach of fiduciary claims should be denied.

### V.     Plaintiffs Have Plead a Claim for Conversion.

Rutherford argues that he "did not have and could not have converted Plaintiffs' money." Dkt. No. 61 at 29. That is a disputed fact inappropriate for determination on a motion to dismiss. Plaintiffs have, though, plead facts that adequately state a claim for conversion as to Rutherford. "'[M]isappropriated funds placed in the custody of another for a definite application' may be the subject of an action for conversion." *In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002). Similar to *In re Ogden*, Plaintiffs have plead that Rutherford intended to exercise dominion and control over funds intended for a specific purpose and because Rutherford actually interfered with control over these funds, Plaintiffs can assert a conversion claim. *See id*.; FAC ¶¶ 8-11, 14, 17, 372-378. Rutherford's motion to dismiss Plaintiffs' claim for conversion should therefore be denied.

VI. **Plaintiffs Have Plead a Claim for Conversion and Aiding and Abetting, Making Rutherford Jointly and Severally Liable for the Full Amount of Damages Suffered by All Plaintiffs.**

Rutherford argues that, because the Roses are the only Plaintiffs that allege that they had any communication or direct interaction with Rutherford, all other Plaintiffs' claims against Rutherford fail. Collectively, Plaintiffs have been damaged in excess of $4.9 million by this scheme. As a coconspirator and aider and abettor, Rutherford is liable for the entirety of damages caused by any of his coconspirators. Rutherford has not challenged the adequacy of Plaintiffs' conspiracy or aiding and abetting claims. "It is axiomatic that since coconspirators are jointly and severally liable for all damages caused by a conspiracy, a private plaintiff need not sue all the conspirators, but may choose to proceed against any one or more of them. As a consequence, a defendant may be held liable for having participated in a conspiracy, even though his coconspirators are not defendants to the action." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1251 (10th Cir. 1988) (simplified). "In a conspiracy that results in tort liability, the cause of action for which the co-conspirators are ultimately held liable is not the tort resulting in the harm, but for the conspiracy that led to the harm." *Jedrziewski v. Smith*, 2005 UT 85, ¶ 8. All claims asserted against Rutherford should therefore survive, and Rutherford's motion to dismiss all claims except those against the Roses should be denied.

## CONCLUSION

For the above reasons, the Court should deny Rutherford's Motion to Dismiss Plaintiffs' claims against Rutherford.

//

DATED this 27th day of July, 2019.

    DEISS LAW PC

    /s/ Wes Felix
    Wesley D. Felix
    Andrew G. Deiss
    Brenda E. Weinberg

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of July, 2019, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO SCOTT RUTHERFORD'S MOTION TO DISMISS** to be served on all counsel of record via e-file notification.

Deiss Law PC

/s/ Megan Murri
