Jonathan O. Hafen (6096) jhafen@parrbrown.com
Royce B. Covington (10160) rcovington@parrbrown.com
Chad S. Pehrson (12622) cpehrson@parrbrown.com
Sara Meg Nielson (13824) snielson@parrbrown.com
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone:    (801) 532-7840
Facsimile:     (801) 532-7750

*Attorneys for Defendants Christopher J. Ashby; Jordan S. Nelson; Scott W. Beynon; Rockwell Debt Free Properties, Inc.; Rockwell TIC, Inc.; and Rockwell Indianapolis, LLC*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ROSA DITUCCI, an individual; STEVEN R. LaROZA, an individual; DEBRA A. LaROZA, an individual; BRUCE I. ROSE, an individual; MAUREEN A. ROSE, an individual; SANFORD ROBERTS, an individual; HELAINE B. ROBERTS, an individual; RUSSELL E. HERTRICH, an individual; FRED JACOB, an individual; EDWARD A. HENNESSEY, an individual; RUSSELL E. HERTRICH REVOCABLE TRUST; SANFORD ROBERTS REVOCABLE TRUST; HELAINE B. ROBERTS REVOCABLE TRUST; THE FRED JACOB LIVING TRUST; EDWARD A. HENNESSEY 2001 REVOCABLE LIVING TRUST; CAMAC, INC., a Kansas corporation; and BLUSH PROPERTY, LLC., a Florida limited liability company,**<br><br>Plaintiffs,<br><br>v.<br><br>**CHRISTOPHER J. ASHBY, an individual; JOHN D. HAMRICK, an individual; JORDAN S. NELSON, an individual;** | **DEFENDANTS ROCKWELL DEBT FREE PROPERTIES, INC.; ROCKWELL TIC, INC.; ROCKWELL INDIANAPOLIS, LLC; CHRISTOPER J. ASHBY; AND JORDAN S. NELSON'S MOTION TO COMPEL ARBITRATION AND DISMISS, OR, ALTERNATIVELY, STAY PROCEEDINGS**<br><br>Case No. 2:19-CV-00277<br><br>The Honorable Tena Campbell<br><br>**Oral Argument Requested** |

|  |
|---|
| SCOTT W. BEYNON, an individual; WILLIAM BOWSER, an individual; CHRIS BROWN, an individual; SCOTT RUTHERFORD, an individual; GREG DESALVO, an individual; ROCKWELL DEBT FREE PROPERTIES, INC., a Utah Corporation; ROCKWELL TIC, INC., a Utah Corporation; NOAH CORPORATION, a Utah corporation; EDMUND AND WHEELER, a New Hampshire corporation; ROCKWELL INDIANAPOLIS, LLC, a Utah limited liability company; GABRIEL MANAGEMENT CORPORATION, a Utah corporation; BELLE ISLE ENTERPRISES, LLC d/b/a 1031 PLACEMENT, a Florida limited liability company; JOHN DOES I-X, and ROE CORPORATIONS I-X, |
| Defendants. |

Defendants Rockwell Debt Free Properties, Inc. ("Rockwell Debt Free"); Rockwell TIC, Inc. ("Rockwell TIC"); and Rockwell Indianapolis, LLC ("Rockwell Indianapolis" or together with Rockwell Debt Free and Rockwell TIC, the "Rockwell Entities"); Christopher J. Ashby ("Ashby"); Jordan S. Nelson ("Nelson"); and Scott Beynon ("Beynon"), pursuant to 9 U.S.C. § 3 and DUCivR 7-1(a), respectfully submit this Motion to Compel Arbitration and Dismiss or, alternatively, Stay Proceedings. Rockwell Debt Free, Rockwell TIC, Rockwell Indianapolis, Ashby, Nelson, and Beynon will be referred to in this Motion as "Defendants."

## RELIEF SOUGHT AND GROUNDS FOR MOTION

The primary agreement at issue in this lawsuit, a Purchase and Sale Agreement ("PSA"), mandates arbitration of any disputes between parties to the PSA. Because all of Plaintiffs' claims against Defendants involve disputes between the parties to the PSA or raise allegations of

substantially interdependent and concerted misconduct by nonsignatories to the PSA and one signatory to the PSA, all of the claims against Defendants are subject to arbitration under the PSA. Accordingly, the Defendants move that the Court compel arbitration and dismiss Plaintiffs' claims against Defendants or, alternatively, stay litigation of those claims pending arbitration.[1]

## BACKGROUND

1. Plaintiffs admit that they "each individually or on behalf of an entity executed a purchase and sale agreement." [*See* Compl. ¶¶ 166, 286.] A true and correct copy of the PSA executed by Plaintiff DiTucci is attached hereto as Exhibit A, which is representative of the PSAs executed by each Plaintiff.

2. In the PSA, Plaintiffs broadly agreed to arbitrate disputes with Rockwell Indianapolis, the other party to the PSA. Paragraph 9 of the PSA states:

> **9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Indiana, before a single arbitrator.

---

[1] Defendants note that, in the Tenth Circuit, a plaintiff may file a motion to compel arbitration in lieu of a responsive pleading to a complaint. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 & n.1(10th Cir. 2011) (unpublished). As a result, Defendants do not intend to waive their right to respond to Plaintiffs' complaint and reserve their right to bring a Rule 12 motion to dismiss on Plaintiffs' claims should this Court determine not to compel arbitration. *See Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1312 (S.D. Fla. 2019) (citing *Lamkin* and agreeing that if the court denied the motion to consolidate that defendant should be permitted to file a motion to dismiss on the merits pursuant to Rule 12); *see also JS Barkats, PLLC v. BE, Inc.*, No. 12 Civ. 6779 (JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) (rejecting argument that motion to compel was procedurally defective because defendant had not filed answer; "parties are permitted to file motions to stay in lieu of an answer or other dispositive motion").

> The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

[*See* Exhibit A, ¶ 9.]

    3.    The PSAs signed by Rockwell Indianapolis and each of the Plaintiffs contain arbitration provisions identical to the provision in paragraph 9 of Exhibit A.

    4.    In the instant action, however, Plaintiffs assert the following causes of action against Rockwell Indianapolis: First Cause of Action, Negligent Misrepresentation; Third Cause of Action, Breach of Fiduciary Duty; Fourth Cause of Action, Fraud/Constructive Fraud; Fifth Cause of Action, Negligent Hiring/Supervision/ Retention; Sixth Cause of Action, Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder; Seventh Cause of Action, Violations of Section 12(a)(1) of the Securities Act and Section 5 Thereunder; Eighth Cause of Action, Sale of Securities by an Unlicensed Broker or Investment Advisor; Ninth Cause of Action, Violations of Plaintiff States Blue Sky Laws; Tenth Cause of Action, Control Person Liability Under Exchange Act; Eleventh Cause of Action, Conversion; Twelfth Cause of Action, Fraudulent Inducement; Thirteenth Cause of Action, Breach of Contract; Fourteenth Cause of Action, Elder Abuse; Fifteenth Cause of Action, Unjust Enrichment; Sixteenth Cause of Action, Civil Conspiracy; and Seventeenth Cause of Action, Aiding and Abetting. [*See generally* Compl.]

    5.    Plaintiffs assert the same claims, except for the Thirteenth Cause of Action,

against the other Rockwell entities, Defendant Ashby, Defendant Nelson, and/or Defendant Beynon. [*See generally* Compl.]

6.     In the PSA, Plaintiffs and Rockwell Indianapolis agreed that the PSA would be governed by Indiana law. [*See* PSA, ¶ 18.]

## ARGUMENT

### I.     THIS COURT SHOULD COMPEL ARBITRATION OF THE CLAIMS AGAINST DEFENDANTS AND DISMISS OR, ALTERNATIVELY, STAY LITIGATION.

The Federal Arbitration Act ("FAA") directs federal courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1983)); *see also* 9 U.S.C. § 1, *et seq*. Congress enacted the FAA in 1925 "to establish[] and regulat[e] the duty to honor" such arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983). The FAA further provides that agreements to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 2.

Under Tenth Circuit authority, a court must enforce an arbitration provision if it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000) (citations omitted). Indeed, the Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts … upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement….

9 U.S.C. § 3.

Accordingly, this Court should compel arbitration of all of Plaintiffs' claims against Defendants because: (1) Plaintiffs agreed to arbitrate any disputes between Plaintiffs and Defendant Rockwell Indianapolis; and (2) the clams alleged against the other Defendants are intertwined with claims against Rockwell Indianapolis.

### A.     Plaintiffs Agreed in the PSA to Arbitrate Disputes Between Plaintiffs and Rockwell Indianapolis.

The arbitration provision in the PSA is part of a contract "evidencing a transaction involving commerce" under the FAA.  *See* 9 U.S.C. § 2.  Accordingly, the scope of the arbitration clause is governed by federal law.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (U.S. 2006) (reiterating that the FAA "create[d] a body of federal substantive law, which was applicable in state and federal courts") (quotations omitted and alteration in original); *see also Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983) and citations cited therein.  "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Moses*, 460 U.S. at 24.  "The Arbitration Act establishes that, as matter of federal law, any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25 (emphasis added); *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290-91 (10th Cir. 2004) (same); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (same).  "To that end, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Am. Recovery Corp.*, 96 F.3d at 92 (quotations omitted).

Here, the PSA provides that "[a]ny dispute between the parties will be submitted to binding arbitration." [*See* Facts, ¶ 2.]  Yet, Plaintiffs' Complaint asserts no fewer than sixteen causes of action against Rockwell Indianapolis. [*See* Facts, ¶ 3.]  This Court should enforce the PSA's arbitration obligation and, accordingly, stay these proceedings against Rockwell Indianapolis and compel Plaintiffs to pursue such claims in arbitration.

### B. The Claims Against the Other Plaintiffs Are Also Subject to the PSA's Arbitration Provision.

The remainder of Plaintiffs' claims against the other Defendants—Ashby, Nelson, Beynon, Rockwell Debt Free, and Rockwell TIC—deserve the same treatment. And it is of no matter that the other Defendants are not a party to the PSA.

The question of whether a non-signatory can be bound by the terms of an agreement to arbitrate is determined by looking to the relevant body of state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293 (10th Cir. 2017) (applying Utah law to question of whether non-signatories could enforce arbitration provision, where the arbitration agreement specified Utah law).  Indiana law, therefore, applies to this question.  [*See* Facts, ¶ 6.]

Indiana recognizes the body of federal case law holding that "under the doctrine of equitable estoppel, a nonsignatory to an agreement may bind a signatory to an arbitration clause." *German Am. Fin. Advisors & Trust Co. v. Reed*, 969 N.E.2d 621, 627 (Ind. Ct. App. 2012).  As that case law holds, "application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause *raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract*.  Otherwise the arbitration the arbitration proceedings between the

two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Plaintiffs' allegations against the Defendants certainly fit that bill.  Indeed, Plaintiffs' Complaint alleges that Defendants, along with the non-moving defendants, worked together in a common scheme to induce Plaintiffs to purchase TIC investments and then to misappropriate or otherwise abscond with the value of those investments, and that each of the Defendants was a participant in the alleged scheme.  According to Plaintiffs, the scheme worked as follows:

- Rockwell formed a wholly owned subsidiary of Rockwell to acquire the property underlying the investment, in this case, Rockwell Indianapolis (the party to the arbitration agreement);

- Rockwell Indianapolis then purchased the underlying property;

- Rockwell Indianapolis then executed a lease of the property with Noah's;

- Rockwell, Ashby, Nelson, and Beynon (and the non-moving defendants) advertised a tenant-in-common investment in the property through sales materials and/or communicated with and made alleged misrepresentations to potential investors in an effort to obtain their investment;

- Once Plaintiffs decided to purchase in interest in the Property, they executed a Purchase and Sale Agreement with Rockwell Indianapolis;

- Meanwhile, Defendants (and the non-moving defendants) knew or were reckless in not knowing, among other things, that the Noah's building was not constructed, that the property was worth a fraction of what Plaintiffs paid for it, that there was no reasonable basis upon which to offer the returns advertised, and that Noah's was insolvent.

- Though funds invested by Plaintiffs were meant to be used for construction of a Noah's building on the property, those funds were misappropriated, and all of the Defendants (and the nonmoving defendants) concealed that misappropriation or participated in it.

[*See* Compl. ¶¶ 17-24, 122-130, 139-147, 159, 166, 286.]  Plaintiffs' First, Third through Twelfth, and Fourteenth through Seventeenth causes of action are asserted either against all Defendants or against Rockwell Indianapolis and some combination of the other Defendants and the nonmoving defendants.  [*See generally* Compl.]   And in Plaintiff's Sixteenth Cause of Action asserting Civil Conspiracy, they alleged that "Defendants," which includes Rockwell Indianapolis and the other Defendants (along with nonmoving defendants) "and others known and unknown, knowingly and willfully conspired and agreed among themselves to misappropriate millions of dollars from Noah's Carmel, conceal the misappropriation, and/or not inform Plaintiffs about the misappropriation" and that Rockwell Indianapolis and most of the other Defendants took "overt acts" in furtherance of that conspiracy.  [*See* Compl. ¶¶ 490, 494.]

    Under the circumstances as Plaintiffs describe them, the allegations against Rockwell Indianapolis, a signatory to the PSA, and the allegations against the non-signatory Defendants posit "substantially interdependent and concerted misconduct" such that Plaintiffs should be estopped from arguing that the PSA's arbitration provisions do not apply to claims against the non-signatory Defendants.  *See German Am. Financial Advisors & Trust Co.*, 969 N.E.2d at 627.

    As a result, all of Plaintiffs' claims against Defendants are subject to the PSA's arbitration provision, and this Court should grant this Motion and dismiss Plaintiffs' claims against Defendants or, in the alternative, stay this litigation pending completion of arbitration. *See Sparks v. Saxon Invests., LLC*, No. 2:09CV151DAK, 2009 WL 2886029, at *6 (D. Utah Sept. 3, 2009) (granting motion to compel arbitration and dismissing claims subject to arbitration).

## CONCLUSION

For the reasons stated above, Defendants request that the Court grant the Motion.

DATED this 24th day of October, 2019

                              PARR BROWN GEE & LOVELESS

                              /s/ *Sara Meg Nielson*
                              Jonathan O. Hafen
                              Chad S. Pehrson
                              Royce B. Covington
                              Sara Meg Nielson
                              *Attorneys for Defendants Christopher J. Ashby; Jordan S. Nelson; Scott W. Beynon; Rockwell Debt Free Properties, Inc.; Rockwell TIC, Inc.; and Rockwell Indianapolis, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Andrew G. Deiss (adeiss@deisslaw.com)
Brenda E. Weinberg (bweinberg@deisslaw.com)
Wesley D. Felix (wfelix@deisslaw.com)
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, UT 84101
*Attorneys for Plaintiff*

D. Loren Washburn (lwashburn@smithwashburn.com)
Jacob L. Fonnesbeck (jfonnesbeck@smithwashburn.com)
Trinity Jordan (tjordan@smithwashburn.com)
SMITH WASHBURN, LLP
8 East Broadway, Suite 320
Salt Lake City, UT 84111
*Attorneys for Greg DeSalvo and Belle Isle Enterprises*

Scott D. Sweeney (scott.sweeney@wilsonelser.com)
WILSON ELSER MOSKOWITZ ELDEMAN & DICKER LLP
1225 17th Street, Suite 2750
Denver, CO 80202
*Attorneys for John D. Hamrick, Chris Brown, and Edmund and Wheeler*

Daniel K. Brough (dbrough@btjd.com)
Ryan M. Merriman (rmerriman@btjd.com)
BENNETT TUELLER JOHNSON & DEERE PC
3165 East Millrock Drive, 5th Floor
Salt Lake City, UT 84121
*Attorneys for William Bowser, Noah Corporation, and Gabriel Management,*

David L. Mortensen (dlmortensen@stoel.com)
STOEL RIVES
201 South Main Street, Suite 1100
Salt Lake City, UT 84111-4904
*Attorneys for Scott Rutherford*

                                                       */s/Sara Meg Nielson*
                                                       Sara Meg Nielson