Wesley D. Felix (Utah Bar No. 6539)
Andrew G. Deiss (Utah Bar No. 7184)
Brenda E. Weinberg (Utah Bar No. 16187)
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, Utah 84101
Tel: (801) 433-0226
adeiss@deisslaw.com
wfelix@deisslaw.com
bweinberg@deisslaw.com

*Attorneys for the Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROSA DiTUCCI, STEVEN R. LaROZA, DEBRA A. LaROZA, BRUCE I. ROSE, MAUREEN A. ROSE, SANFORD ROBERTS, HELAINE B. ROBERTS, RUSSELL E. HERTRICH, FRED JACOB, EDWARD A. HENNESSEY, PAMELA A. CAPLINGER, on behalf of the ESTATE OF JAMES M. CAPLINGER, JR.; RUSSELL E. HERTRICH REVOCABLE TRUST; SANFORD ROBERTS REVOCABLE TRUST;HELAINE B. ROBERTS REVOCABLE TRUST; THE FRED JACOB LIVING TRUST; EDWARD A. HENNESSEY 2001 REVOCABLE LIVING TRUST; CAMAC, INC., and BLUSH PROPERTY, LLC, <br><br>*Plaintiffs*, <br><br>vs. <br><br>CHRISTOPHER J. ASHBY, SCOTT RUTHERFORD, ROCKWELL DEBT FREE PROPERTIES, INC., ROCKWELL TIC, INC., et al., <br><br>*Defendants*. | Case No. 2:19-cv-00277 <br><br>**PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS** <br><br> The Honorable Tena Campbell |

**INTRODUCTION AND BACKGROUND FACTS**

Attorneys for Defendants Greg DeSalvo and Belle Isle Enterprises, LLC (collectively "DeSalvo") filed a motion to dismiss Plaintiffs' claims on November 20, 2019. The motion to dismiss asserts that Plaintiffs' claim for the sale of unregistered securities under Section 12(a) of the Securities Act must be dismissed because Plaintiffs have not alleged that DeSalvo made use of the instrumentalities of interstate commerce, thus depriving this Court of jurisdiction. This assertion is manifestly false. Indeed, in connection with their motion to dismiss this claim, DeSalvo makes three separate misrepresentations to this Court.

First, DeSalvo states that other than "conclusory" allegations that DeSalvo used email to communicate with other co-defendants in the conspiracy, and that Plaintiffs learned of co-conspirator Rockwell through DeSalvo's website, "Plaintiffs fail to make any specific allegations as to [DeSalvo's] use of interstate commerce." ECF No. 139 at 11. This is false. Among many other allegations relating to the conspiracy, Plaintiffs allege specifically that "DeSalvo sent Camp, Merklin, and Blush Property the Sales Package for Noah's Carmel." ECF No. 94 at ¶ 267. This use of the mail to send sales materials is alone sufficient to establish the requisite "use of interstate commerce."

Second, DeSalvo states that "Plaintiffs also make no allegation that [DeSalvo] received a commission for the sale of the TIC Interest to the Blush Plaintiffs . . ." ECF No. 139 at 11. This statement is false, or at best, intentionally misleading. The Second Amended Complaint ("SAC") alleges that "DeSalvo earned approximately 3% in commissions from each sale of TIC interests in Rockwell properties, including Noah's Carmel." ECF No. at ¶¶ 40(g), 41, 113. The sole Carmel property DeSalvo is alleged to have sold is to the Blush Plaintiffs.

Third, DeSalvo states that Plaintiffs make no allegation that DeSalvo "sold the TIC interest to the Blush Plaintiffs." ECF No. 139 at 12. But Plaintiffs allege specifically that DeSalvo received funds as commission "for the sale of Property owned by Rockwell Indianapolis" and that "DeSalvo has sold TIC interests in approximately seven Rockwell properties." ECF No. 94 at ¶¶ 40(g), 41, 112-113. Plaintiffs also allege generally that eleven defendants, including DeSalvo, sold or offered for sale unregistered securities to Plaintiffs. ECF No. 94 at ¶¶ 408-412. And, finally, Plaintiffs allege that DeSalvo transmitted the sales materials to the Blush Plaintiffs upon which they relied in purchasing the TIC interests. ECF No. 94 at ¶¶ 14, 267-268.

Fourth, DeSalvo states that Plaintiffs claim that the TIC interest is a security "but provide no allegations as to why it is so." This statement is also demonstrably false. As Plaintiffs have pointed out to DeSalvo, the SAC alleges that "the investment was a passive interest in an enterprise operated and managed by Defendants" and that "the investment was in a common enterprise with profits to come solely from the efforts of others." ECF No. 94 at ¶¶ 81-82, 90-91. The form and substance of the investment are described throughout the SAC. DeSalvo's assertion that there are no allegations as to why the investment is a security is deliberately misleading.

In a telephone call with DeSalvo's counsel before the motion to dismiss was filed, counsel for Plaintiffs asked for the basis of DeSalvo's motion to dismiss the Section 12 claim. When told the motion was based, in part, on the failure to allege that DeSalvo sold any security, Plaintiffs' counsel responded that this was simply not true as an inspection of the SAC would reveal. On November 21, 2019, the day after DeSalvo filed his motion to dismiss, Plaintiffs' counsel again requested by email that DeSalvo withdraw his motion to dismiss the Section 12

claim because the motion was based upon clear misrepresentations to the Court. The email identified the above misrepresentations and the relevant paragraphs of the SAC demonstrating that those representations were false. Plaintiffs' counsel then served DeSalvo with the motion for sanctions on November 22, 2019. Notwithstanding Plaintiffs' several requests, counsel for DeSalvo refused to withdraw the offending section of his motion or to retract those statements to this Court that are manifestly false. This conduct warrants sanctions under Rule 11 of the Federal Rules of Civil Procedure.

## ARGUMENT

Both the Securities Act of 1933 and the Securities Exchange Act of 1934 prohibit the use of interstate commerce in connection with committing certain acts. 15 U.S.C.A. § 77q(a); 15 U.S.C. § 78j. Under the Securities Act "[t]he term 'interstate commerce' means trade or commerce in securities or any transportation or communication relating thereto among the several States." 15 U.S.C.A. § 77b(a)(7). Under the Exchange Act "[t]he term 'interstate commerce' means trade, commerce, transportation, or communication among the several States,' and includes 'intrastate use of (A) any facility of a national securities exchange or of a telephone or other interstate means of communication, or (B) any other interstate instrumentality.'" 15 U.S.C. A. § 78c(a)(17). "Use of the mail, telephone, and internet satisfies these requirements." *SEC v. Spinosa* 31 F. Supp.3d 1371, 1375 (S.D. Fla. 2014) (collecting cases). Even an intrastate use of an instrumentality of interstate commerce, such as of the telephone, may satisfy the requirement. *Carran v. Morgan*, 510 F. Supp.2d 1053, 1060 n.7. (S.D. Fla. 2007).

DeSalvo claims that the Act and Exchange Act require "making untrue statements via interstate commerce." This misstates the law. "It is not required by the statute or the rule that the manipulative or deceptive device or contrivance be a part of or actually transmitted in the

mails or instrumentality of interstate commerce; it is sufficient that such a device or contrivance be employed in connection with the use of the instruments of interstate commerce or the mails." *Kerbs v. Fall River Indus.*, 502 F.2d 731, 737 (10th Cir. 1974). As the *Kerbs* court went on to hold, it is not even necessary that each defendant make use of the mail, telephone or internet. Where there is a common conspiracy or scheme to induce plaintiffs to enter into the transaction involved, it is enough that one conspirator use the telephone to arrange a meeting. This is "clearly enough to satisfy the jurisdictional requirements of the statute and the rule that the proscribed deceptive device or contrivance used by defendants be employed in connection with the use of an instrumentality of interstate commerce." *Kerbs*, 502 F.2d at 738. Additionally, "[t]he fraud or misrepresentation itself need not have been communicated over the telephone or through the mail, as long as the defendant's *use* of the telephone or mail 'furthered the fraudulent scheme.'" *SEC v. Merrill Scott & Assoc., Ltd.*, 505 F. Supp. 2d. 1193, 1212 (D. Utah, May 21, 2007) (quoting *Aquionics Acceptance Corp. v. Kollar*, 503 F. 2d. 1225, 1228 (6th Cir. 1974) (emphasis in the original)).

In this case, it is alleged that DeSalvo advertised the Rockwell properties on the internet. The Blush Plaintiffs discovered the Rockwell investment through DeSalvo's website. ECF No. 94 at ¶ 265. It is further alleged, that DeSalvo communicated from Florida with co-conspirators in Utah. ECF No. 94 at ¶ 116. DeSalvo sent numerous emails relating to the investment to and from Utah defendants. ECF No. 94 at ¶¶ 40(f), 41. DeSalvo sent the sales materials to the Blush Plaintiffs upon which they relied in making their purchase. ECF No. 94 at ¶ 267. DeSalvo, a Florida resident, was then paid a 3% commission on the sale by Rockwell in Utah. ECF No. 94 at ¶¶ 41, 69, 76-77, 113. Acknowledging these allegations, DeSalvo represents to the Court that Plaintiffs do not allege the use by DeSalvo of the telephone, mail or email in connection with the

sale of the TIC securities.

DeSalvo's motion to dismiss Plaintiffs' claim for the sale of unregistered securities on the basis that DeSalvo did not use interstate commerce in connection with the sale of securities "amounts to an intentional misrepresentation of the facts and law," and, thus, sanctions should be entered against Defendant and Defendant's counsel. A Court may impose sanctions against an attorney where a pleading is presented for an improper purpose, lacks evidentiary support, or is unwarranted by existing law. *See* Fed. R. Civ. P. 11(b), (c). A sanction under Rule 11 may include reasonable attorney fees.

In determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation. *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992) (citations omitted).

Here, DeSalvo's motion to dismiss, as it applies to the use of interstate commerce, is a pleading that lacks evidentiary support and is not warranted by existing law. In addition, the defects in DeSalvo's motion were specifically raised by Plaintiffs, and Defendant did not withdraw his motion. This further supports the award of sanctions.

## CONCLUSION

Because DeSalvo's conduct is egregious and imposes significant expense on Plaintiffs, it is proper that Plaintiffs be awarded their attorney fees incurred in making this motion and in responding to DeSalvo's motion to dismiss.

Respectfully submitted this 22nd day of November, 2019.

*/s/ Wesley Felix*
Wesley Felix
Brenda Weinberg
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2019, I caused a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS** to be served upon all counsel of record via the Court's Electronic Filing Notification System.

/s/ Kathryn Loden

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November, 2019, I caused a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS** to be served upon all counsel of record via the Court's Electronic Filing Notification System.

/s/ Kathryn Loden