IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROSA DiTUCCI, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER ASHBY, et al.,<br><br>Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:19-cv-277-TC-PMW |

On April 23, 2019, seventeen Plaintiffs[1] filed this action against a group of at least fifteen Defendants,[2] who allegedly misappropriated funds from a real estate development project in Indiana. Two of these Defendants, William Bowser and Gabriel Management Corporation (the "Bowser Defendants"), now move to dismiss the five causes of action asserted against them in the operative Second Amended Complaint ("SAC"): (1) Fraud and Constructive Fraud; (2) Negligent Hiring, Supervision, and Retention; (3) Unjust Enrichment; (4) Civil Conspiracy; and (5) Aiding and Abetting.[3] (ECF No. 99.) For the reasons stated below, the motion to dismiss is

---

[1] The Plaintiffs are Rose DiTucci, Steven R. LaRoza, Debra A. LaRoza, Bruce I. Rose, Maureen A. Rose, Sanford Roberts, Helaine B. Roberts, Russell E. Hertrich, Fred Jacob, Edward A. Hennessey, Russel E. Hertrich Revocable Trust, Sanford Roberts Revocable Trust, Helaine B. Roberts Revocable Trust, the Fred Jacob Living Trust, Edward A. Henessey 2001 Revocable Living Trust, Camac, Inc., and Blush Property, LLC.

[2] The Defendants are Christopher J. Ashby, John D. Hamrick, Jordan S. Nelson, Scott W. Beynon, William Bowser, Chris Brown, Scott Rutherford, Greg DeSalvo, Rockwell Debt Free Properties, Inc., Rockwell TIC, Inc., Noah Corp., Edmund and Wheeler, Rockwell Indianapolis, LLC, Gabriel Management Corp., and Belle Isle Enterprises, LLC, plus Does I-X and Roe Corporations I-X.

[3] Mr. Bowser is also referenced in the body of the sixth cause of action (SAC ¶ 400) and the body of the tenth cause of action (SAC ¶ 437), but is not listed in the caption for either claim. Neither party addresses whether these causes of action were also intended to apply to Mr. Bowser.

granted on the negligent hiring, supervision, and retention claim and the aiding and abetting claim, but is otherwise denied.

# ANALYSIS

## I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint when the complaint fails to "state a claim upon which relief may be granted." When reviewing a complaint, the court must take all well-pleaded factual allegations as true. Bell Atl. Corp. v. Twombly, 550 US. 544, 555 (2007). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations must "state a claim to relief that is plausible on its face." Twombly at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal at 678.

To survive a motion to dismiss, most civil actions need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## II. Fraud

The elements of a fraud claim include the following:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

Giusti v. Sterling Wentworth Corp., 201 P.3d 966, 977 n.38 (Utah 2009).

The Bowser Defendants raise two arguments against this cause of action.[4] First, they claim that the SAC is not specific enough because the allegations address Defendants as a group, rather than as individuals. Second, they assert that Plaintiffs have failed to articulate the alleged misrepresentations with sufficient particularity.

A. <u>Group Pleading Doctrine</u>

Plaintiffs frequently treat all Defendants as a single entity in the SAC. For example, Plaintiffs allege that there were "representations made by many of the Defendants" (SAC ¶ 7); that "[a]ll of the Defendants concealed [information] from Plaintiffs" (<u>id.</u> at ¶ 20); that "Defendants made false statements about important facts" (<u>id.</u> at ¶ 378); and that "Defendants reinforced the misrepresentations contained in the sales materials and/or made by Defendants in pitching the sale of the TIC securities" (<u>id.</u> at ¶ 127). Yet even under the more lenient pleading standard of Rule 8, the Tenth Circuit has criticized this practice. See <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing a complaint because "[g]iven the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular . . . acts they are alleged to have committed.").

Nevertheless, Plaintiffs argue that such allegations are permissible under the group pleading doctrine. Under this doctrine, "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246, 1254 (10th Cir. 1997).

---

[4] The SAC characterizes the fourth cause of action as one for fraud or, in the alternative, constructive fraud. But at the motion hearing, Plaintiffs conceded that they would not be pursuing a constructive fraud claim against the Bowser Defendants.

3

The Bowser Defendants criticize Plaintiffs' reliance on Schwartz because its holding was subsequently superseded by the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA").[5] See In re Thornburg Mortg., Inc. Sec. Litig., 695 F. Supp. 2d 1165, 1196 (D.N.M. 2010). But the PSLRA only addresses federal securities law violations. The Bowser Defendants have identified no cases holding that the group pleading doctrine cannot still be relied upon for other causes of action. See Medina v. Catholic Health Initiatives, Case No. 13-cv-01249-REB-KLM, 2014 WL 4852272 at *3 (D. Colo. Sept. 30, 2014) (permitting group pleading for a breach of fiduciary duty claim).

The Bowser Defendants also argue that this doctrine does not apply here because the Defendants were not all part of a single corporate entity. It is true that, in most instances, the group pleading doctrine is invoked when corporate statements are at issue. See, e.g., Winer Family Tr. v. Queen, 503 F.3d 319, 335 (3d Cir. 2007); Southland Secs. Corp. v. INSpire Ins. Sol., Inc., 365 F.3d 353, 363 (5th Cir. 2004). But it does not follow that the doctrine is exclusively limited to corporate settings. Indeed, in some instances, group pleadings cannot logically be avoided if, in fact, a group worked together to defraud others:

> It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him . . . . Under Rule 9(b) the plaintiff cannot be required to allege with particularity the manner in which individual defendants acted in concert. . . .
>
> Plaintiffs have alleged the individual defendants responsible for making certain oral public statements or written representations attributable to them. The remaining individuals are alleged to have acted in concert to defraud the plaintiffs through various statements and reports. Plaintiffs' allegations are sufficient to provide fair notice of the claims asserted and allow defendants to answer the complaint.

---

[5] Although Schwartz was not decided until 1997, it was ruling on the sufficiency of a complaint that had been filed before passage of the PSLRA. Schwartz, 124 F.3d at 1255.

4

In re Storage Tech. Corp. Sec. Litig., 630 F. Supp. 1072, 1077 (D. Colo. 1986) (internal quotations omitted).

Although not formally incorporated into a single entity, the Defendants here are alleged to have behaved like a group of corporate leaders, jointly producing misleading marketing materials that were released to potential investors. (See SAC ¶ 127.) In this context, the court concludes that Plaintiffs may properly plead that all Defendants are collectively responsible for these misrepresentations.

B. Alleged Misrepresentations

The Bowser Defendants next contend that Plaintiffs' have not alleged with particularity what misrepresentations were made. Again, the court disagrees.

First, Plaintiffs specifically allege that Defendants falsely represented to them that their investment in the Indiana property was likely to yield a return of between 7.00% and 10.20% over ten years. (SAC ¶¶ 102, 114, 122-23, 126.) At the hearing, the Bowser Defendants claimed such statements were merely opinions about possible future returns, while fraud requires a misrepresentation of fact. But there is a difference between giving an overly optimistic estimate and knowingly stating an unrealistic estimate. For example, in In re Syngenta AG MIR 162 Corn Litigation, 131 F. Supp. 3d 1177 (D. Kan. 2015), the complaint alleged that defendants made false statements about how quickly they could obtain regulatory approval to export their products to China. The defendants filed a motion to dismiss, arguing that such statements were merely their good-faith opinion about China's likely reaction to their application. But the motion was denied because the court could not determine from the pleadings whether the statements were "forward-looking predictions and opinions," which would not be actionable, or "present expectations, which could constitute misrepresentations of fact." Id. at 1227-28.

Similarly, Plaintiffs here are not alleging that such returns were simply unlikely; they are alleging that Defendants knew, at the time they distributed the marketing materials, that Plaintiffs would not actually be receiving such returns. In other words, Plaintiffs have alleged that Defendants were lying about their own, then-existing expectations. Such statements may well be actionable fraud.

Second, and just as importantly, Plaintiffs' fraud claim is based not only on affirmative misrepresentations but also on Defendants' alleged material omissions. See Hussein v. UBS Bank USA, 446 P.3d 96, 103 (Utah Ct. App. 2019) ("An action for fraud . . . include[es] concealments and omissions.") The Bowser Defendants argue that "Plaintiffs' fraud claim turns on affirmative misrepresentations, not failures to disclose information," (Defs.' Mot. Dismiss at 13 (ECF No. 99)), even though Plaintiffs explicitly allege that Defendants "concealed from Plaintiffs that individual event venues were not independent financial entities, but funds from one investment entity were used for other properties." (SAC ¶ 20.) The allegation that Defendants knew, but did not disclose, that funds would be moved between numerous entities is central to Plaintiffs' suit, and yet the Bowser Defendants do not even address that issue in the motion.

For all of these reasons, the Bowser Defendants' motion to dismiss is denied for the fourth cause of action.

### III. Negligent Hiring, Supervision, or Retention

The Bowser Defendants next move to dismiss Plaintiffs' fifth cause of action for negligent hiring, supervision, or retention. Plaintiffs state in their opposition brief that they consent to the dismissal of this claim. (See Pls.' Opp'n at 4 n.2 (ECF No. 115).) Accordingly, the fifth cause of action shall be dismissed.

## IV. Unjust Enrichment

The Bowser Defendants also move to dismiss Plaintiffs' fifteenth cause of action for unjust enrichment.

> In order to prevail on a claim for unjust enrichment, three elements must be met. First, there must be a benefit conferred on one person by another. Second, the conferee must appreciate or have knowledge of the benefit. Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

Desert Miriah, Inc. v. B&L Auto, Inc., 12 P.3d 580 (Utah 2000) (internal citations and quotations omitted).

Plaintiffs allege that after they invested $4.9 million in the Indiana project, "Bowser directly misappropriated a portion of these funds, among other things, for operations, to pay debts, and to be used by Bowser's construction company, Gabriel Management Corporation ('Gabriel Construction') to complete construction on other Rockwell properties. Bowser also directly misappropriated approximately $500,000 to use in the construction of his home in Park City, UT." (SAC ¶ 19.)

This is clearly sufficient. Plaintiffs have alleged that they gave money to Defendants for a specific purpose—developing the property in Indiana—and that Defendants instead passed those funds to Mr. Bowser to be used for his personal benefit.

The Bowser Defendants try to characterize the chain of events as being much more complicated: Plaintiffs provided money to the Rockwell Defendants, who in turn sent funds to entities like Noah Corporation and Gabriel Management, who then used the funds to pay Mr. Bowser a normal salary for his services as president of those entities, and it was this salary that was used to construct his home. The Bowser Defendants then cite case law which holds that compensation in the normal course of business generally is not enough to prove unjust

7

enrichment; otherwise, every employee who drew a salary from Noah or Gabriel Management could be brought into this lawsuit. See, e.g., In re Galena Biopharma Inc. Derivative Litig., 83 F. Supp. 3d 1047, 1068 (D. Or. 2015).

As Plaintiffs accurately noted at the hearing, this is not an appropriate argument at the motion to dismiss stage. The Bowser Defendants are asking the court to read into the allegations certain inferences that favor their view of the events. But at the motion to dismiss stage, inferences are to be drawn in Plaintiffs' favor. See Rupp v. Pearson, 658 F. App'x 446, 449 (10th Cir. 2016) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint . . . survives a motion to dismiss under Rule 12(b)(6)") (quoting Starr v. Baca, 652 F.3d 1202, 1216-17 (9th Cir. 2011)). At the moment, all that is before the court is the allegation that Mr. Bowser wrongfully took Plaintiffs' money and used it for his own purposes. The Bowser Defendants may, at a later stage, submit evidence showing that this is untrue, but for purposes of ruling on the motion to dismiss, Plaintiffs' allegations are sufficient.

## V. Civil Conspiracy

Next, the Bowser Defendants move to dismiss Plaintiffs' sixteenth cause of action for civil conspiracy.

> In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.

Harvey v. Ute Indian Tribe of Uinta and Ouray Reservation, 416 P.3d 401, 425 (Utah 2017) (internal quotations omitted).

The Bowser Defendants first assert that because Plaintiffs' conspiracy claim is based primarily on their fraud claim, this cause of action should be dismissed for the same reasons that

8

the fraud cause of action should be dismissed. Because the court concluded above that Plaintiffs' fraud claim was adequate, this argument necessarily fails.

The Bowser Defendants also argue that Plaintiffs' have improperly conflated the "overt act" element and the "object to be accomplished" element of their conspiracy claim. The Bowser Defendants contend that Plaintiffs' only relevant conspiracy allegation is that Defendants misappropriated funds, which cannot be both the overt act and the object to be accomplished. But this is a mischaracterization of the complaint. Misappropriating the money was the object to be accomplished, while taking steps to get the money—creating misleading marketing materials and omitting to inform Plaintiffs' of key facts about the structure of the investment, for example (see SAC ¶¶ 1-2, 7-8, 20-27, 123-27)—were the overt acts necessary to accomplish the conspiracy. Accordingly, the court concludes this cause of action was sufficiently pled.

## VI. Aiding and Abetting Fraud

The last cause of action challenged by the Bowser Defendants is Plaintiffs' seventeenth cause of action for aiding and abetting fraud.[6]

At the outset, the court notes that the actual section of the SAC dedicated to aiding and abetting simply repeats verbatim Plaintiffs' allegations regarding conspiracy. (Compare SAC ¶¶ 489-496 with ¶¶ 497-504.) Plaintiffs conceded at the hearing that they mistakenly inserted those allegations twice, rather than include the correct elements of aiding and abetting under the appropriate caption. They nevertheless maintain that the aiding and abetting cause of action was sufficiently alleged elsewhere in the complaint.

---

[6] The SAC does not actually specify what underlying tort Defendants are alleged to have aided and abetted. The Bowser Defendants' motion to dismiss, for example, spends some time discussing the possibility that Plaintiffs are trying to allege a claim for aiding and abetting the breach of fiduciary duties. But in their opposition, Plaintiffs make clear that their claim is one for aiding and abetting fraud. (See Pl.'s Opp'n at 14-15.)

9

But setting aside the issue of adequate pleading, the court is not convinced that aiding and abetting fraud is even a permissible cause of action. As the Bowser Defendants pointed out in their motion, no Utah court has ever recognized such a claim. See Rabo Agrifinance, Inc. v. Bliss, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017) ("Utah courts have not yet recognized a claim for aiding and abetting fraud."). Plaintiffs simply ignored this argument in their opposition. Absent briefing explaining why this cause of action should be permitted, the court sees no reason to allow the claim to go forward. Accordingly, the Bowser Defendants' motion to dismiss will be granted for this cause of action.

## VII. Alter Ego Allegations

Finally, although not a cause of action, the Bowser Defendants challenge Plaintiffs' characterization of Mr. Bowser and Gabriel Management as alter egos of one another.

> A court may disregard a corporate entity under the alter ego doctrine if: (1) a unity of interest and ownership exists such that the separate personalities of the entities no longer survive; "and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." Lowry, 2012 UT 39, ¶ 14 (quoting Thrift & Loan Co., 596 P.2d 1028, 1030 (Utah 1979)). In determining whether the alter ego doctrine applies, Utah courts consider the following non-exclusive factors:
>
> > (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a façade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.
>
> Id. at ¶¶ 16, 21 (quoting Colman v. Colman, 743 P.2d 782, 786 (Utah Ct. App. 1987)). While these factors act as "useful considerations," courts must determine each alter ego case "based on its individual facts by evaluating the entire relationship between the corporation and its shareholders." Id. at ¶ 18.

Springfield Fin. & Mortg. Co. v. Lilley, Case No. 2:14-cv-00679-EJF, 2016 WL 4275642 at *5 (D. Utah Aug. 12, 2016).

10

Plaintiffs identify Gabriel Management as Mr. Bowser's "alter ego" in the complaint (SAC ¶ 23), but do not otherwise plead facts showing that any of the above factors are relevant here. The Bowser Defendants contend that this is insufficient. Generally, the court would be inclined to agree, but this case has an unusual evidentiary background: an extensive record has already been developed because of Plaintiffs' earlier motion for a writ of attachment. As part of that process, Mr. Bowser filed two affidavits, was deposed, and was called as a witness at an evidentiary hearing. (See ECF Nos. 35-1, 39-1, 41-5 & 80.) And the SAC was not filed until after the court had received this evidence. (ECF No. 94.)

"As a general rule, the only facts [a court] consider[s] in assessing the sufficiency of a complaint are those alleged in the complaint itself." Emps.' Ret. Sys. of Rhode Island v. Williams Companies, Inc., 889 F.3d 1153, 1158 (10th Cir. 2018).) But there are exceptions to this rule, including for "matters of which a court may take judicial notice" and "documents the plaintiffs relied upon in bringing suit." Id. The court concludes it is appropriate, on the facts here, to take the previously admitted evidence into account in determining whether an alter ego relationship could plausibly exist.

The Northern District of New York has considered similar evidence in resolving a motion to dismiss. In Robert H. Law, Inc. v. Woodbine Business Park, Inc., Case No. 5:13-cv-1393, 2018 WL 851382 (N.D.N.Y. Feb. 12 2018), the plaintiff brought suit against numerous defendants for allegedly leaking pollutants into the plaintiff's soil. Id. at *1. During a deposition, one of the defendants testified that an additional entity, National Grid, had also been involved in the contamination. The plaintiff responded by amending the complaint to add National Grid as a defendant. Id. at *7.

11

National Grid moved to dismiss the amended complaint on the ground that the plaintiff's allegations were "conclusory" and "without any factual support." Id. The plaintiff did not dispute that the amended complaint itself was lacking, but argued that "when assessing the sufficiency of the factual allegations in the Second Amended Complaint, the Court should consider the . . . deposition testimony because that testimony first alerted Plaintiff to National Grid's presence near the [contaminated] site." Id. at *22. The court agreed, holding that because the "deposition testimony was the sole reason for amending the Complaint to join [National Grid] as defendants in the litigation, the Court finds that it can consider that deposition testimony when determining whether Plaintiff sufficiently stated claims upon which relief can be granted." Id. at *23.[7]

Here, although both Gabriel Management and Mr. Bowser were listed as Defendants in the original complaint, Plaintiffs did not allege that Gabriel Management was an alter ego of Mr. Bowser until they filed the SAC. In other words, that allegation was added only after Plaintiffs had an opportunity to review Mr. Bowser's declarations, deposition, and witness testimony. Because Mr. Bowser's own evidence was integral to Plaintiffs' decision to amend the complaint, the court concludes such evidence should be considered in determining whether Plaintiffs have sufficiently alleged an alter ego relationship.

At the evidentiary hearing, Mr. Bowser testified that Gabriel Management was wholly owned by Noah Corporation, and that Mr. Bowser was the president of both entities. (Evid. Hr'g Tr. at 105:2, 114:14-116:2 (ECF No. 80).) Gabriel Management was in charge of developing properties owned by Noah. (Id. at 116:24-117:20.) Noah had a single bank account, and the only signatories on the account were Mr. Bowser and his two daughters. (Id. at 118:9-119:11.)

---

[7] Although the district court in Robert H. Law considered both the allegations in the amended complaint and the deposition itself, the court nevertheless still concluded that the plaintiff had failed to sufficiently state a cause of action against National Grid. Robert H. Law, 2018 WL 851382 at *28.

12

Gabriel Management similarly had only one bank account, and the only signatories were Mr. Bowser, his son-in-law, and his son-in-law's brother. (Id. at 121:4-23.) Additionally, Gabriel Management and Noah shared a single Divvy account, which Mr. Bowser characterized as being similar to a cash or debit card system, which allowed both entities to pay their expenses from a single source. (Bowser Dep. at 92:3-93:8 (ECF No. 41-5).) Mr. Bowser and other family members would also make business payments for Noah and Gabriel Management on their personal credit cards and then seek reimbursement from the entities. (Id. at 93:11-95:14.)

Mr. Bowser testified that, in making business decisions, there was functionally no difference between his position as Noah's president and his position as Gabriel Management's president. (Evid. Hr'g Tr. at 198:11-17.) Mr. Bowser received a salary from both Noah and Gabriel Management, and both entities also paid salaries to Mr. Bowser's wife. (Id. at 132:17-25, 136:8-11.) In total, about eight of Mr. Bowser's family members and relatives were on either Noah or Gabriel Management's payrolls. (Id. at 184:2-184:16.) Over the course of about three years, hundreds of thousands of dollars were transferred between Noah, Gabriel Management, J & J Construction (an entity controlled by the same son-in-law that worked for Gabriel Management) and Walby (an entity controlled by Mrs. Bowser). (Id. at 160:19-163:21)

Mr. Bowser testified that Gabriel Management received $3.3 million from the Rockwell Defendants that was meant for the property in Indiana, which he redirected to other Noah properties. (Id. at 154:25-156:17.) Although Mr. Bowser denied it, Plaintiffs also allege that a portion of these funds went to Mr. Bowser's personal home renovations. (SAC ¶ 19.) In Mr. Bowser's view, he had complete discretion over reallocating such funds between projects, and there was no board approval or other officer approval required. (Evid. Hr'g Tr. at 157:17-158:8.) Mr. Bowser, both personally and on behalf of Noah, took unsecured loans from Rockwell, the

13

same entity that had provided Gabriel with the $3.3 million in the first place. (Id. at 175:12-177:13.) Mr. Bowser also took out a personal loan from Noah, an action that he maintained required no board approval. (Id. at 190:5-191:1.)

These facts suggest that corporate formalities among the various entities were disregarded, that there was a complicated intermixing of Mr. Bowser's family with his businesses, and that Mr. Bowser tended to transfer large sums of money from account to account without any limitations on his power to do so. Moreover, there is at least a plausible inference that Mr. Bowser transferred even more funds to himself than have so far been disclosed, based on his testimony that by being "thrifty," he had been able to purchase a $60,000 car and a $2.4 million home on an approximately $250,000 annual salary. (Id. at 202:24-203:9.)

Having reviewed the above evidence, the court concludes Plaintiffs' alter ego allegations are sufficient. Importantly, the Tenth Circuit has emphasized that even under the "Twombly/Iqbal standard," the key inquiry regarding the sufficiency of pleadings remains whether the allegations "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). Here, there can be no doubt that Mr. Bowser and Gabriel Management understand the nature of the alter ego allegations against them; after all, the allegations derive almost entirely from Mr. Bowser's own testimony.

Accordingly, the court concludes that Plaintiffs have sufficiently alleged an alter ego relationship between Mr. Bowser and Gabriel Management.[8]

---

[8] As the court previously emphasized in its writ of attachment order (see ECF No. 46 at 3 n.1), this is only a preliminary determination. Nothing from this order, or from the court's earlier order, should be construed as suggesting that the court has actually determined that an alter ego relationship exists. The court merely holds that the SAC and Mr. Bowser's own testimony demonstrate that such a relationship has been plausibly alleged. See Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007) (requiring that allegations include "enough facts to state a claim to relief that is plausible on its face.").

**ORDER**

For the foregoing reasons, Defendants William Bowser and Gabriel Management Corporation's Motion to Dismiss (ECF No. 99) is GRANTED for the fifth and seventeenth causes of action and is DENIED for the fourth, fifteenth, and sixteenth causes of action.

DATED this 27th day of February, 2020.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge