IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROSA DiTUCCI, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER ASHBY, et al.,<br><br>Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:19-cv-277-TC-PMW |

Nineteen Plaintiffs[1] have brought suit against a group of fifteen Defendants,[2] who allegedly misappropriated funds from a real estate development project in Indiana. Two motions to dismiss are now before the court, one filed by Defendants John Hamrick, Chris Brown, and Edmund and Wheeler, Inc. (the "E&W Defendants") and the other filed by Greg DeSalvo and Belle Isle Enterprises, LLC (the "Belle Isle Defendants"). (See ECF Nos. 108, 139.)[3] Although not identical, the motions raise many similar arguments, and so are addressed together.

---

[1] The Plaintiffs are Rosa DiTucci, Steven R. LaRoza, Debra A. LaRoza, Bruce I. Rose, Maureen A. Rose, Russell E. Hertrich, the Russel E. Hertrich Revocable Trust, Sanford Roberts, the Sanford Roberts Revocable Trust, Helaine B. Roberts, the Helaine B. Roberts Revocable Trust, Fred Jacob, the Fred Jacob Living Trust, Edward A. Hennessey, the Edward A. Henessey 2001 Revocable Living Trust, CAMAC, Inc., Blush Property, LLC, Linda Camp, and Bryan Merklin.
[2] The Defendants are Christopher J. Ashby, John D. Hamrick, Jordan S. Nelson, Scott W. Beynon, William Bowser, Chris Brown, Scott Rutherford, Greg DeSalvo, Rockwell Debt Free Properties, Inc., Rockwell TIC, Inc., Noah Corp., Edmund and Wheeler, Inc., Rockwell Indianapolis, LLC, Gabriel Management Corp., and Belle Isle Enterprises, LLC, plus Does I-X and Roe Corporations I-X. Defendants Scott B. LeFevre and LeFevre Management were dismissed from the action on September 10, 2019.
[3] A third motion to dismiss, by Defendant Scott Rutherford (ECF No. 101), was stayed after Mr. Rutherford filed a notice of bankruptcy. (See ECF No. 114.)

For the reasons stated below, the E&W Defendants' motion to dismiss is granted in part and denied in part. The Belle Isle Defendants' motion to dismiss is denied.

<h2 style="text-align:center">BACKGROUND[4]</h2>

This action involves four groups of Defendants: the Rockwell Defendants (Christopher Ashby, Jordan Nelson, Scott Beynon, Scott Rutherford, Rockwell Debt Free Properties, Inc., Rockwell TIC, Inc., and Rockwell Indianapolis, LLC); the Noah Defendants (Noah Corporation, Gabriel Management Corporation, and William Bowser), the E&W Defendants, and the Belle Isle Defendants. (Second Amended Complaint ("SAC") ¶¶ 63–77 (ECF No. 94).)

The Rockwell Defendants are in the business of selling Tenant-in-Common ("TIC") investments. (Id. at ¶ 128.) A TIC investment is one in which up to thirty-five investors hold real property as tenants-in-common. (Id. at ¶ 83.) Such investments are considered attractive because they can provide a steady return-on-investment through rental income and because they allow investors to receive certain federal tax benefits. (Id. at ¶¶ 86–89.)

In 2018, the Rockwell Defendants purchased real property in Indiana. (Id. at ¶¶ 139–141.) The E&W Defendants and the Belle Isle Defendants were "finders" who worked with the Rockwell Defendants to locate potential investors and convince them to purchase TIC interests in the property. Through the efforts of the E&W Defendants, TIC interests were sold to Plaintiffs Rosa DiTucci, Steven LaRoza, Debra LaRoza, Edward Hennessey, the Edward A. Hennessey 2001 Revocable Living Trust, Sanford Roberts, the Sanford Roberts Revocable Trust, Helaine Roberts, the Helaine Roberts Revocable Trust, Russell Hertich, and the Russell E. Hertrich Revocable Trust. (Id. at ¶¶ 142–43, 167, 181, 204–05, 210, 219, 221, 226, 229, 234, 237.) The Belle Isle Defendants helped sell TIC interests to Plaintiffs Linda Camp, Bryan

---

[4] The court draws these facts from the operative Second Amended Complaint. The court accepts these allegations as true for purposes of these motions only. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Merklin, and Blush Property, LLC. (Id. at ¶¶ 265, 269.) Meanwhile, Plaintiffs Fred Jacob, the Fred Jacob Living Trust, Bruce Rose, Maureen Rose, and CAMAC, Inc., worked directly with the Rockwell Defendants to purchase their interests. (Id. at ¶ 231–33, 244, 256, 263–64.)

The funds from these investments were supposed to be used by the Noah Defendants to build an event center on the property, which would be known as Noah's Carmel. The Noah Defendants would then use the profits from the event center to pay rent to the Rockwell Defendants, who in turn would disburse a portion of this rental income to the investors. (Id. at ¶¶ 131–132, 142–147, 155.)

Plaintiffs allege that Defendants made numerous fraudulent misrepresentations and omissions while convincing Plaintiffs to invest in Noah's Carmel. For example, Defendants' marketing materials included false statements about Plaintiffs' likely return on investment and about the types of commissions earned by the E&W Defendants and the Belle Isle Defendants. (Id. at ¶¶ 8, 27, 39, 41, 102, 113–14, 122–23, 126, 155–58.) Plaintiffs also assert that Defendants made misleading statements about the status of the event center; some Plaintiffs were led to believe the center had already been built, while others believed construction of the center was ongoing, when in fact construction had not yet begun. (Id. at ¶¶ 160–65, 172, 180, 211, 202, 220, 227, 231.) Finally, the complaint states that Defendants failed to inform Plaintiffs that their investments would not actually go toward building Noah's Carmel. Instead, the money was used by the Noah Defendants to fund unrelated projects—"stealing from Peter to pay Paul," as Defendant William Bowser allegedly put it—which ultimately led to Noah declaring bankruptcy in May of 2019. (Id. at ¶¶ 17–21, 25, 126.)

Based on these facts, Plaintiffs bring the following causes of action against some or all Defendants:

1.  Negligent Misrepresentation;
2.  Negligence;
3.  Breach of Fiduciary Duty;
4.  Fraud;
5.  Negligent Hiring/Supervision/Retention;
6.  Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder;
7.  Violation of Section 12(a)(1) of the Securities Act and Section 5 Thereunder;
8.  Sale of Securities by an Unlicensed Broker under various state securities statutes;
9.  Violation of State Blue Sky Laws;
10. Control Person Liability Under Exchange Act Section 20(a);
11. Conversion;
12. Fraudulent Inducement;
13. Breach of Contract;
14. Elder Abuse;
15. Unjust Enrichment;
16. Civil Conspiracy; and
17. Aiding and Abetting.

The E&W Defendants and Belle Isle Defendants now move to dismiss the claims asserted against them.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint when the complaint fails to "state a claim upon which relief may be granted." When reviewing a complaint, the court must take all well-pleaded factual allegations as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

\\

\\

## I.    Federal Securities Claims

### A.  Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act of 1934 instructed the Securities and

Exchange Commission ("SEC") to craft rules and regulations to prevent securities fraud.  See 15

U.S.C. § 78j.  Rule 10b-5 is one of the regulations the SEC has promulgated and Plaintiffs' sixth

cause of action is for violations of Rule 10b-5.  Under that rule:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a
>      material fact necessary in order to make the statements made, in the light
>      of the circumstances under which they were made, not misleading, or
> (c) To engage in act, practice, or course of business which operates or would
>      operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The parties address only subdivision (b) of this rule.  (See E&W Mot. at 13 (ECF No.

108); Belle Isle Mot. at 7 (ECF No. 139).)[5]  A defendant is liable under that subsection if:

> (1) the defendant made an untrue or misleading statement of material fact, or
> failed to state a material fact necessary to make statements not misleading; (2) the
> statement complained of was made in connection with the purchase or sale of
> securities; (3) the defendant acted with scienter, that is, with intent to defraud or
> recklessness; (4) the plaintiff relied on the misleading statements; and (5) the
> plaintiff suffered damages as a result of his reliance.

Weinstein v. McClendon, 757 F.3d 1110, 1112–13 (10th Cir. 2014) (quoting In re Level 3

Commc'ns, Inc. Sec. Litig., 667 F.3d 1331, 1333 (10th Cir. 2012)).

---

[5] Although Defendants' motions to dismiss analyze only subsection (b), Plaintiffs suggest (in response to the Belle Isle motion, but not the E&W motion) that their Rule 10b-5 cause of action actually includes claims under subsections (a) and (c) as well.  (Pl.'s Opp'n at 6 n.3 (ECF No. 140).)  Because the court concludes that Plaintiffs have sufficiently alleged a cause of action under subsection (b), the court need not address whether Plaintiffs have alternatively pled a claim under subsections (a) or (c).

The Belle Isle Defendants move to dismiss this cause of action on the ground that Plaintiffs have not sufficiently alleged the first, third, fourth, or fifth elements of the claim. The E&W Defendants challenge only the first and third elements.

1. Material Statements or Omissions

Under the Private Securities Litigation Reform Act (PSLRA), the complaint is subject to a heightened pleading standard. For the first element of their Rule 10b-5 claim, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." PSLRA, 15 U.S.C. § 78u-4(b)(1). A statement or omission is material if it is "reasonably calculated to influence the decisions of an investor—institutional or otherwise—in its trading in securities." SEC v. Gann, 565 F.3d 932, 937 (5th Cir. 2009); see also Flynn v. Bass Bros. Enters., Inc., 744 F.2d 978, 985 (3d Cir. 1984) (defining "material" for Rule 10b-5 cases as a "'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available'") (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).

The E&W Defendants and the Belle Isle Defendants mostly do not challenge whether the statements included in the complaint could be considered false misrepresentations.[6] Rather, they focus on Plaintiffs' failure to provide specific facts showing that it was these Defendants, as

---

[6] The E&W Defendants do very briefly suggest that some of the statements identified by Plaintiffs are nonactionable, either because they were just statements of opinion or because they were just puffery and "corporate optimism." (See E&W Mot. at 20–21.) But in the court's view, these issues should more appropriately be resolved at the summary judgment stage. Whether something is an opinion or puffery, as opposed to a knowing misstatement of fact, depends largely on the speaker's intent, which cannot be determined at the motion to dismiss stage. See, e.g., In re Syngenta AG MIR 162 Corn Litig., 131 F. Supp. 3d 1177 (D. Kan. 2015) (denying motion to dismiss because the court could not determine from the pleadings alone whether the alleged misstatements were "forward-looking predictions and opinions," which would not be actionable, or "present expectations, which could constitute misrepresentations of fact.").

opposed to other Defendants, who made the misrepresentations. The Defendants contend that Plaintiffs have improperly engaged in "group pleading"—treating all Defendants as a single unit, rather than as individuals—which is not permitted under the PSLRA. See, e.g., TDC Lending, LLC v. Private Capital Group, Inc., 340 F. Supp. 3d 1218, 1226–27 (D. Utah 2018); accord In re Thornburg Mortg., Inc. Sec. Litig., 695 F. Supp. 2d 1165, 1196 (D.N.M. 2010).

The complaint does undoubtedly include some generalized pleading. (See, e.g., SAC ¶¶ 7, 20, 127, 378.) But many of the allegations that could arguably be called "group pleading" are simply there to provide greater context to the other, more individualized allegations. Reviewing the complaint as a whole, the court concludes that Plaintiffs have provided sufficient, Defendant-specific allegations to plead the first element of this claim.

For example, Plaintiffs state that Mr. Hamrick, the Vice President of E&W, made a 5% commission on each sale, but falsely told each investor that he actually received only a $700 flat fee. (Id. at ¶¶ 27, 37(g), 122.) Similarly, "Defendants Rockwell, E&W, and Belle Isle advertised the property with no closing costs and did not disclose any commissions or fees other than [a] $700 [fee]," even though Belle Isle was also receiving a 3% commission. (Id. at ¶¶ 113, 125.) Given the amounts invested, Defendants' commissions were significantly higher than the $700 fee advertised.[7]

Plaintiffs also contend that Mr. DeSalvo sent a sales package to several Plaintiffs, even though this sales package contained misrepresentations about Plaintiffs' likely return on investment. (Id. at ¶¶ 102, 127, 155–58, 267.) Plaintiffs allege that Mr. Hamrick and Mr. Brown sent out the same materials. (Id. at ¶¶ 101, 126–27, 228.) The sales materials also contained

---

[7] For example, Plaintiff Blush Property, LLC, who worked with Mr. DeSalvo, invested $369,300. (SAC ¶ 269.) A 3% commission on this amount would equal approximately $11,079. Similarly, Plaintiff Edward A. Hennessey 2001 Revocable Living Trust purchased $400,000 worth of TIC investments from Mr. Hamrick. (SAC ¶ 221.) A 5% commission on this amount would equal $20,000.

representations regarding the favorable tax consequences of TIC investments, such as their eligibility for 1031 exchanges.[8] (Id. at ¶ 155(b).) Mr. Hamrick distributed these sales materials even though he "knew these securities did not qualify for 1031 treatment." (Id. at ¶ 122; see also id. at ¶¶ 331–32.)

Plaintiffs' complaint also includes allegations of omissions. For example, Plaintiffs state that no Defendants informed them about the lack of progress toward building Noah's Carmel (id. at ¶¶ 160–65, 172, 180, 202, 211, 220, 227, 231) and that no Defendants disclosed how funds were being moved around between multiple projects (id. at ¶¶ 17–21, 25, 126). While it is true that some (though not all) of these paragraphs could be described as "group pleadings," it is unclear how Plaintiffs could be more specific; because they are alleging that each Defendant failed to make certain disclosures, there is no practical way for Plaintiffs to detail the date or place of conversations that never occurred.

In sum, the court concludes that the above allegations are sufficient and that Plaintiffs have properly pled that the E&W Defendants and the Belle Isle Defendants were responsible for fraudulent misrepresentations and omissions.

2. Scienter

To properly plead scienter, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." PSLRA, 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). An affirmative misrepresentation violates Rule 10b-5 only if Defendants acted with a "'mental state embracing intent to deceive, manipulate, or defraud,' or recklessness." Anderson v. Spirit Aerosystems Holdings, Inc., 827 F.3d 1229, 1236–37 (10th Cir. 2016) (quoting Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1105 (10th Cir. 2003)). To

---

[8] Section 1031 exchanges allow capital gains taxes from the sale of real estate to be deferred, if the capital gains are reinvested into other real property. (SAC ¶ 9.)

be reckless, Defendants must have "(1) acted in an extreme departure from the standards of ordinary care and (2) presented a danger of misleading buyers or sellers that was known to the defendants or so obvious that the defendants must have been aware of the danger." Id. at 1237 (internal quotations omitted). Similarly, for an omission to violate Rule 10b-5, "the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." Weinstein, 757 F.3d at 1113 (quoting City of Phila. v. Fleming Cos., Inc., 264 F.3d 1245, 1261 (10th Cir. 2001)). Similar to an affirmative misrepresentation, "[t]he requirement of knowledge in this context may be satisfied under a recklessness standard." Id.

The court concludes that Plaintiffs have satisfactorily pled scienter. Perhaps the most straightforward example is the alleged commissions. As noted above, Plaintiffs claim that the E&W Defendants and the Belle Isle Defendants told Plaintiffs that the only costs associated with the investment was a $700 closing fee, when in fact Defendants were taking a 5% and 3% commission from the top of the investments. (SAC ¶¶ 27, 37(g), 40(g), 122, 125, 277.) There is a strong inference that, because these funds were going directly into Defendants' pockets, they would be aware that they were making affirmative misrepresentations to Plaintiffs. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 325 (2007) ("[P]ersonal financial gain may weigh heavily in favor of a scienter inference."). And on its face, this information would be material to an investor because it directly diminished the size of their investment.

While the other misrepresentations and omissions identified by Plaintiffs are slightly less direct, the court nevertheless concludes that Plaintiffs' allegations create a strong inference of scienter for this misconduct as well. For example, Plaintiffs assert that the E&W Defendants and the Belle Isle Defendants were in almost constant contact with the Rockwell Defendants and the

Noah Defendants, visiting Utah "to strategize and disseminate marketing and other plans" and frequently communicating by email, including for the express purpose of discussing the status of the project with Mr. Bowser, who was in charge of overseeing the event center's construction. (Id. at ¶¶ 37(d), 37(f), 38(d), 40(d), 40(f), 116–18.)  The Defendants were close business associates who had conceived of the project together.  (Id. at ¶¶ 99, 102, 114, 399.)  Mr. DeSalvo allegedly worked on investments with the Rockwell Defendants on at least seven earlier occasions.  (Id. at ¶ 112.)  Mr. Hamrick had also worked with the Rockwell Defendants on earlier projects, so much so that "[t]he vast majority of [Mr.] Hamrick's income was generated from commissions earned through the sale of Noah's TIC securities."  (Id. at ¶ 122; see also id. at ¶¶ 169, 210, 220(b).)  In short, given the longstanding nature of the parties' relationships, there is a strong inference that the E&W Defendants and the Belle Isle Defendants knew that the advertised return on investment was unrealistic, that construction had not begun on Noah's Carmel, and that funds that should have gone to Noah's Carmel were being used for other purposes.  And given their long-term experience in the industry, the E&W Defendants and the Belle Isle Defendants would know that this information would be material to their clients.

Accordingly, the court concludes that Plaintiffs' scienter allegations are sufficient.

3. Reliance and Damages

The fourth element of a Rule 10b-5 claim is reliance.  The fifth element is damages. Only the Belle Isle Defendants challenge these elements.  They note that Ms. Camp, Mr. Merklin, and Blush Property, LLC (the "Blush Plaintiffs") are the only Plaintiffs to whom they sold TIC interests, and they argue that there are no allegations specifically addressing reliance by or damages to the Blush Plaintiffs.

The court disagrees. According to the SAC, the Blush Plaintiffs reviewed the sales package that Mr. DeSalvo provided to them and communicated with one of the Rockwell Defendants, Mr. Nelson, about the investment. The Blush Plaintiffs then relied on statements from Mr. DeSalvo and Mr. Nelson in deciding to purchase TIC interests in Noah's Carmel. (SAC ¶¶ 268–69.) The Blush Plaintiffs also allege that they were damaged when their investment was reduced by the Belle Isle Defendants' undisclosed 3% commission. (Id. at ¶ 113.) In addition to these allegations, which are unique to the Blush Plaintiffs, there are also more general allegations showing that all of the Plaintiffs relied upon misleading sales materials (id. at ¶ 14) and that $4.9 million from their investments was misappropriated (id. at ¶¶ 22). Plaintiffs also state that they have suffered damages due to "unpaid monthly 'base rents' or distributions due on their investments" and "potential tax-related losses." (Id. at ¶ 28.)[9]

Accordingly, the fourth and fifth elements have been adequately pled. And for all of the reasons described above, the court concludes Plaintiffs have sufficiently stated a cause of action for violations of Rule 10b-5.

## B. Section 12(a)(1)

Plaintiffs' seventh cause of action is for violation of another provision of federal securities law. Section 12(a)(1) of the Securities Act of 1933—now codified at 15 U.S.C. §§ 77e and 77l—imposes civil liability for the sale of unregistered securities in interstate commerce. The E&W Defendants and the Belle Isle Defendants challenge this cause of action on the ground that Plaintiffs have not given sufficient allegations regarding the interstate commerce element.[10]

---

[9] Although the E&W Defendants do not address the reliance element in their motion, they do spend one paragraph addressing the issue in their reply. (E&W Reply at 6 (ECF No. 135).) For the sake of completeness, the court notes that in its view, Plaintiffs have also sufficiently alleged reliance on the misrepresentations and omissions made by the E&W Defendants. (See SAC ¶¶ 172–73, 176, 181, 207, 210–16, 220–21, 227–29.)

[10] Use of interstate commerce is also an element of the Rule 10b-5 cause of action, but Defendants address the issue only in the context of Section 12(a)(1). In any event, the same analysis applies to both claims. Compare 15 U.S.C.

For purposes of this provision, "interstate commerce" is defined as "trade or commerce in securities or <u>any transportation or communication relating thereto</u> among the several States." 15 U.S.C. § 77b(a)(7) (emphasis added). Plaintiffs have thoroughly pled this element by alleging that email, mail, telephone, and the Internet, as well as travel among the states, were used in connection with the overall scheme to sell the TIC investments. (<u>See, e.g.</u>, SAC ¶¶ 37(b), 37(c), 37(d), 37(f), 37(g), 38(b), 38(d), 40(b), 40(c), 40(d), 40(f), 40(g), 41, 99–104, 113, 116–17, 125, 127, 167, 169, 226, 228, 265–67.) Accordingly, the court rejects Defendants' challenge to the Section 12(a)(1) cause of action.

### C. Control Person Liability

Plaintiffs' tenth cause of action is for control person liability under § 20(a) of the Securities Exchange Act. <u>See</u> 15 U.S.C. § 78t(a). The claim is brought against Mr. Hamrick and E&W (and other Rockwell Defendants), but is not asserted against Mr. Brown or the Belle Isle Defendants.

"[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." <u>City of Phila. v. Fleming Cos., Inc.</u>, 264 F.3d 1245, 1270 (10th Cir. 2001) (<u>quoting</u> <u>Maher v. Durango Metals, Inc.</u>, 144 F.3d 1302, 1305 (10th Cir. 1998)).

The E&W Defendants argue that Plaintiffs' allegations do not show, with sufficient specificity, how Mr. Hamrick exercised control over E&W. Plaintiffs respond by suggesting that control person liability can be pled generally, and that their allegations that Mr. Hamrick was the vice president of E&W (SAC ¶ 27) and that he "exercised actual power and control over . . . E&W" (<u>id.</u> at ¶ 437) are enough.

---

§ 77b(a)(7) <u>with</u> 15 U.S.C. § 78c(a)(17) (creating substantively similar definitions of "interstate commerce" for both claims).

Even assuming that no heightened pleading standard applies,[11] the court concludes that these conclusory allegations are insufficient under the Supreme Court's <u>Twombly</u>/<u>Iqbal</u> standard. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads <u>factual content</u> that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added).  Additionally, in their opposition brief, Plaintiffs state, "Although not plead [sic] in the SAC, Plaintiffs now know that [Mr.] Hamrick's girlfriend, Mary O'Toole, is president of E&W and that approximately a million dollars in commissions at the time of the Carmel investments was transferred directly from Rockwell to an account controlled by Mary O'Toole."  (Pl.'s Opp'n at 13 n.1.)  This statement casts further doubt on whether Mr. Hamrick (as opposed to Ms. O'Toole) is a control person at E&W.

Because the complaint consists of only one factual allegation (that Mr. Hamrick is the vice president of E&W) and one legal conclusion (that he exercises control over E&W), and because even these minimal allegations have been called into doubt by Plaintiffs' own opposition brief, the court concludes that Plaintiffs' control person liability claim has not been adequately pled.

## II.    State Law Claims

Plaintiffs also assert numerous causes of action arising from state law, to which the E&W Defendants and Belle Isle Defendants object.

### A.  Personal Jurisdiction

Defendants argue first that the court need not reach the merits of the state law claims because once the court dismisses the federal securities law claims, the state law claims must be

---

[11] A case from 1994 suggests that "allegations of 'controlling person' liability are not subject to the particularity requirements of Rule 9(b)."  <u>Arena Land & Inv. Co., Inc. v. Petty</u>, 906 F. Supp. 1470, 1482 (D. Utah 1994).  But neither party addresses whether this case remains good law in light of the heightened pleading requirements subsequently imposed by the PSLRA.

dismissed as well for lack of personal jurisdiction. The E&W Defendants and the Belle Isle

Defendants explain that this is necessary because they do not have sufficient minimum contacts

with Utah.

For the reasons already stated above, Plaintiffs have sufficiently alleged federal security

law violations by the E&W Defendants and the Belle Isle Defendants. And when nationwide

service of process applies—as it does here under the federal securities laws (see Appl. to Enforce

Admin. Subpoenas of SEC v. Knowles, 87 F.3d 413, 417 (10th Cir. 1996))—the court need not

undertake the minimum contacts analysis typically required for personal jurisdiction. See U.S. v.

Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002); see also IUE AFL-CIO Pension Fund v.

Herrmann, 9 F.3d 1049, 1056 (2nd Cir. 1993). Instead, the only jurisdictional question the court

need address is whether exercising personal jurisdiction over the defendants would comport with

due process.

"[I]n a federal question case where jurisdiction is invoked based on nationwide service of

process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to

the defendant. In other words, the Fifth Amendment 'protects individual litigants against the

burdens of litigation in an unduly inconvenient forum.'" Peay v. BellSouth Med. Assistance

Plan, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting Mathews v. Eldridge, 424 U.S. 319, 331–32

(1976)). Defendants bear the burden "to show that the exercise of jurisdiction in the chosen

forum will 'make litigation so gravely difficult and inconvenient that [they are] unfairly . . . at a

severe disadvantage in comparison to [their] opponent.'" Id. at 1212 (quoting Burger King Corp.

v. Rudzewicz, 471 U.S. 462, 478 (1985)).

In Peay, the Tenth Circuit listed the following factors to consider when determining

whether Defendants have met their burden:

(1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

Id. at 1212–13. The Tenth Circuit has also noted that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened." Id. at 1213 (internal citations and quotations omitted).

This is not an unusual case. The core of the alleged fraud occurred in Utah and the Rockwell Defendants and Noah Defendants are all based in Utah. (SAC ¶¶ 63–72.) Although the E&W Defendants and Belle Isle Defendants are from New Hampshire and Florida, respectively, they also visited Utah and had sale agreements in place with Utah entities. (Id. at ¶¶ 13, 37–41.) Additionally, Defendants have access to counsel here and the ease of electronic communications significantly lessens the burden of litigating here. The court concludes, based on a balance of the factors, that Defendants would not be unduly inconvenienced by litigating in Utah.

## B. Fraud-Based Claims

Plaintiffs' fourth cause of action is for common law fraud. The Belle Isle Defendants and the E&W Defendants both contend that Plaintiffs' allegations of fraud do not satisfy the heightened pleading requirements of Rule 9(b). See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

But Rule 9(b) is a slightly less rigorous standard than the PSLRA.  See Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1095–96 (10th Cir. 2003).  Because Plaintiffs' common law fraud cause of action is based on the same misrepresentations and omissions as the federal securities claims (see SAC ¶ 378), and because the court already concluded above that Plaintiffs had sufficiently alleged securities fraud under the PSLRA, the court also concludes that the common law fraud claim has been pled with sufficient specificity.

The E&W Defendants make this same argument regarding Plaintiffs' third cause of action for breach of fiduciary duty, their ninth cause of action for violation of state securities laws, and the twelfth cause of action for fraudulent inducement.  Again, all of these claims are based on the same underlying facts as the federal securities law violations.  (Id. at ¶¶ 374, 420–23, 448.)  Because the court has already concluded that Plaintiffs pled those facts with sufficient specificity, this argument fails.

### C.  Conversion

Plaintiffs' eleventh cause of action is for conversion.  They bring it against the E&W Defendants but not the Belle Isle Defendants.

In Utah, "[a] conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." State v. Twitchell, 832 P.2d 866, 870 (Utah Ct. App. 1992) (quoting Allred v. Hinkley, 328 P.2d 726, 728 (Utah 1958)).  To be liable for conversion, a defendant need not engage in "conscious wrongdoing," but must have "an intent to exercise dominion or control over the goods inconsistent with the owner's right."  Id.

Here, Plaintiffs' allege that Defendants wrongfully converted money from Plaintiffs' TIC investments.

Money may be the subject of conversion when the party charged wrongfully received it. <u>Public Util. Dist. Number One v. Wash. Pub. Power Supply Sys.</u>, 104 Wash. 2d 353, 705 P.2d 1195, 1211 (1985), <u>modified</u>, 713 P.2d 1109 (1986); <u>see also</u> <u>Boyd v. Wimes</u>, 664 S.W.2d 596, 599 (Mo. Ct. App. 1984) "[w]hile ordinarily money represented by a general debt cannot be the subject of conversion, an exception is recognized for misappropriated funds placed in the custody of another for a definite application").

<u>Id.</u>

The E&W Defendants argue this cause of action should be dismissed because Plaintiffs allege that the Rockwell Defendants and the Noah Defendants misappropriated Plaintiffs' investment, not the E&W Defendants. That is not accurate. The complaint specifically states that the E&W Defendants secretly skimmed off a portion of Plaintiffs' investment to pay themselves a commission. (SAC ¶¶ 8, 27.) If, as alleged, the E&W Defendants were redirecting part of Plaintiffs' funds for themselves, then the E&W Defendants may be liable for conversion. Accordingly, this claim has been properly pled.

### D. Civil Conspiracy

Next, both the E&W Defendants and the Belle Isle Defendants move to dismiss Plaintiffs' sixteenth cause of action for civil conspiracy.

In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.

<u>Harvey v. Ute Indian Tribe of Uinta and Ouray Reservation</u>, 416 P.3d 401, 425 (Utah 2017) (internal quotations omitted).

Plaintiffs allege that all of the Defendants, including the E&W Defendants and the Belle Isle Defendants, worked together to promote and sell the TICs. (SAC ¶¶ 8, 10–14, 22.) This satisfies the first three elements ("combination of two or more persons," "an object to be accomplished," and "a meeting of the minds"). And, as the court has already held, Plaintiffs have

adequately alleged fraud against the E&W Defendants and the Belle Isle Defendants. The fraud

claim satisfies the "unlawful overt act" element. See Estrada v. Mendoza, 275 P.3d 1024, 1029

(Utah Ct. App. 2012) (requiring plaintiff to plead a tort as an overt act). Finally, Plaintiffs state

that as a result of the scheme created by Defendants, they lost their investments. (SAC ¶¶ 21, 28.)

That satisfies the last element ("damages as a proximate result").

Accordingly, the court concludes Plaintiffs have satisfactorily alleged a civil conspiracy.

### E. Aiding and Abetting

The E&W Defendants also move to dismiss Plaintiffs' seventeenth cause of action for

aiding and abetting.[12]

The section of the SAC alleging aiding and abetting simply repeats verbatim Plaintiffs'

allegations regarding conspiracy. (Compare SAC ¶¶ 489–96 with ¶¶ 497–504.) This is not a

mere technical defect, as Plaintiffs appear to contend. Rather, the failure to include the correct

elements deprives all Defendants of notice of the basis for Plaintiffs' claim. Notably, in an

earlier motion to dismiss, Defendant William Bowser suggested that it was unclear whether this

cause of action was for aiding and abetting fraud or aiding and abetting breach of fiduciary duty.

Plaintiffs responded in their opposition by addressing only the aiding and abetting fraud claim.

(See Pls.' Opp'n at 14–15 (ECF No. 115).) The court granted the motion to dismiss on the

ground that it was unclear whether aiding and abetting fraud was even a cause of action under

Utah law. (See Order at 9–10 (ECF No. 152).)

The E&W Defendants' motion to dismiss, by contrast, proceeds under the assumption

that Plaintiffs were attempting to plead a claim of aiding and abetting securities fraud, which

they argue is impermissible. Plaintiffs respond in the opposition that they were trying to plead a

---

[12] This cause of action has also been asserted against the Belle Isle Defendants, but they did not move to dismiss this claim.

cause of action for aiding and abetting breach of fiduciary duty.  (See Pls.' Opp'n at 18 (ECF No. 128).)[13]

Ultimately, Plaintiffs have simply pled conspiracy twice.  They have never actually explained in the complaint itself what their aiding and abetting cause of action is based on.  This practice does not provide fair notice to Defendants regarding what claim Plaintiffs are actually pursuing.

For this reason, the E&W motion to dismiss will be granted for the seventeenth cause of action.

### F.  Economic Loss Rule

Next, the E&W Defendants move to dismiss Plaintiffs' causes of action for negligent misrepresentation, negligence, and negligent hiring/supervision/retention on the ground that these claims are barred by the economic loss rule.

The E&W Defendants cite HealthBanc Int'l LLC v. Synergy Worldwide, Inc., 435 P.3d 193, 196 (Utah 2018), for the general proposition that negligence claims are barred by the economic loss rule unless there was physical damage to property or a bodily injury.  But as correctly noted by Plaintiffs in opposition, Utah courts do not apply the economic loss rule to negligence claims against real estate brokers, agents, or appraisers.  West v. Inter-Fin., Inc., 139 P.3d 1059, 1063–64 (Utah Ct. App. 2006).  Plaintiffs argue that since the E&W Defendants are "real estate professionals" (SAC ¶ 27), they are also excluded from the economic loss rule.

---

[13] To be clear, Plaintiffs' opposition to the E&W motion was filed before the court issued its order on the Bowser motion.  So it is not as though Plaintiffs tactically pursued another argument after seeing that their first argument was rejected by the court.  Rather, because Plaintiffs approached the claim in two entirely different ways in their opposition to the Bowser motion and their opposition to the E&W motion, it appears Plaintiffs themselves are uncertain about what exactly they are claiming in this aiding and abetting cause of action.

In their reply brief, the E&W Defendants never respond to this argument. In fact, the E&W Defendants ignore the economic loss rule entirely. Instead, their reply focuses solely on whether Plaintiffs' negligence claims should be dismissed because they were insufficiently pled. (E&W Reply at 9 (ECF No. 135).)

The court does not consider arguments raised for the first time in reply, and so does not address the sufficiency of the allegations. See Pleasant Grove Dev. Partners, LLC v. FDIC, Case No. 2:09-cv-00959-RJS, 2015 WL 4773027 at *6 n.6 (D. Utah Aug. 12, 2015).[14] The E&W Defendants' motion originally only challenged these causes of action under the economic loss rule. Absent an explanation from the E&W Defendants regarding why they do not fall within the exception for real estate professionals articulated in West, the court concludes that none of Plaintiffs' allegations are barred by the economic loss rule.

### G. Corporate Veil

Finally, the E&W Defendants argue that for each of Plaintiffs' non-fraud-based causes of action,[15] Plaintiffs can only hold Mr. Hamrick and Mr. Brown liable if they first convince the court to pierce the corporate veil and hold them accountable for the misconduct of E&W. The E&W Defendants move to dismiss these causes of action because Plaintiffs have not sufficiently alleged any basis for piercing the corporate veil.

So far as the court can determine—and consistent with Plaintiffs' argument in opposition—Plaintiffs are not trying to pierce the corporate veil. The only allegation the E&W Defendants cite to suggest that Plaintiffs are trying to pierce the corporate veil is the complaint's allegation that Mr. Hamrick and Mr. Brown are agents of E&W. (SAC ¶ 344.) But the purpose

---

[14] In the same section of the reply, the E&W Defendants suggest for the first time that Plaintiffs' elder abuse claim is also insufficiently pled. Again, the court declines to consider this untimely argument.

[15] According to the E&W Defendants, this argument applies to Plaintiffs' causes of action for negligent misrepresentation, negligence, conversion, elder abuse, and unjust enrichment.

of this allegation is not to pierce the corporate veil.  In fact, the E&W Defendants have it backwards.  Through this allegation, Plaintiffs are explaining why, under an agency theory, E&W may be liable for the acts of Mr. Hamrick and Mr. Brown.  They are not suggesting that Mr. Hamrick and Mr. Brown should be liable for E&W's misconduct.  (Id.)

In short, Plaintiffs are free to assert claims against Mr. Hamrick and Mr. Brown for the individual Defendants' own allegedly wrongful actions.  They need not allege facts sufficient to pierce the corporate veil to reach Mr. Hamrick or Mr. Brown.

## ORDER

For the foregoing reasons, the motion to dismiss brought by Defendants John Hamrick, Chris Brown, and Edmund and Wheeler, Inc. (ECF No. 108) is GRANTED for the tenth and seventeenth causes of action and is otherwise DENIED.

The motion brought by Greg DeSalvo and Belle Isle Enterprises, LLC (ECF No. 139) is DENIED.

DATED this 16th day of March, 2020.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge