ERIK A. CHRISTIANSEN, USB# 7372
JEFFREY C. COREY, USB# 9938
PARSONS BEHLE & LATIMER PC
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 768-6832
*douglas.henkin@dentons.com*
*(pro hac vice application pending)*

*Attorneys for Defendants First American Title Insurance Company and Kirsten Parkin*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

ROSA DiTUCCI, an individual; STEVEN R. LaROZA, an individual; DEBRA A. LaROZA, an individual; BRUCE I. ROSE, an individual; MAUREEN A. ROSE, an individual; SANFORD ROBERTS, an individual; HELAINE B. ROBERTS, an individual; RUSSELL E. HERTRICH, an individual; FRED JACOB, an individual; EDWARD A. HENNESSEY, an individual; RUSSELL E. HERTRICH REVOCABLE TRUST; SANFORD ROBERTS REVOCABLE TRUST; HELAINE B. ROBERTS REVOCABLE TRUST; THE FRED JACOB LIVING TRUST; EDWARD A. HENNESSEY 2001 REVOCABLE LIVING TRUST; CAMAC, INC., a Kansas corporation; and BLUSH PROPERTY, LLC., a Florida limited liability company,

*Plaintiffs*,

vs.

CHRISTOPHER J. ASHBY, an individual; JOHN D. HAMRICK, an individual; JORDAN S. NELSON, an individual; SCOTT W. BEYNON, an individual;

**MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN**

Case No. 2:19-cv-00277

The Honorable Tena Campbell

ORAL ARGUMENT REQUESTED

WILLIAM BOWSER, an individual; SCOTT RUTHERFORD, an individual; ROCKWELL DEBT FREE PROPERTIES, INC., a Utah Corporation; ROCKWELL TIC, INC., a Utah Corporation; NOAH CORPORATION, a Utah corporation; EDMUND AND WHEELER, a New Hampshire corporation; ROCKWELL INDIANAPOLIS, LLC, a Utah limited liability company; GABRIEL MANAGEMENT CORPORATION, a Utah corporation; KIRSTEN PARKIN, an individual; FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation; JOHN DOES I-X, and ROE CORPORATIONS I-X.,

*Defendants*.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................ 1

FACTS ........................................................................................ 2

ARGUMENT ........................................................................................ 4

I. THE FEDERAL ARBITRATION ACT GOVERNS THIS MOTION, STRONGLY FAVORS ARBITRATION, AND REQUIRES THAT ARBITRATION AGREEMENTS BE "RIGOROUSLY" ENFORCED ........................ 4

II. THE STANDARD FOR COMPELLING ARBITRATION ........................................ 5

A. Plaintiffs Agreed to Individual Arbitrations ........................................ 5

B. Ms. Parkin Can Compel Arbitration ........................................ 6

III. PLAINTIFFS' CLAIMS ARE ARBITRABLE ........................................ 7

A. The Arbitration Agreements Encompass Plaintiffs' Claims ........................................ 7

B. Individual Arbitration Has Been Ordered On the Claims Alleged Against the FA Defendants Based on Similar Arbitration Agreements ........................................ 8

C. Plaintiffs' Claims Must Be Individually Arbitrated ........................................ 9

IV. PLAINTIFFS' CLAIMS ARE ALSO ARBITRABLE UNDER THE PSAS ........................ 9

V. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION ........................................ 10

CONCLUSION ........................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)........................................ 4

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................ 4

*Armiio v. Prudential Insurance Co. v. America*,
72 F. 3d 793 (10th Cir. 1995)........................................ 10

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)........................................ 6

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986)........................................5, 7

*Baker v. Comcast Corporation*,
No. 2:19-cv-00652, 2020 WL 3895411 (D. Utah Jul. 10, 2020)........................................ 9

*Byrd*, 470 U.S. at 217–18........................................ 5

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)........................................ 4

*Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*,
391 F.3d 1129 (10th Cir. 2004)........................................ 4

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*,
835 F.3d 1195 (10th Cir. 2016)........................................8, 9

*Doe 1 v. Carmel Operator, LLC*,
144 N.E.3d 743 (Ind. Ct. App. 2020)........................................6, 9

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)........................................ 4

*German Am. Fin. Advisors & Tr. Co. v. Reed*,
969 N.E.2d 621 (Ind. Ct. App. 2012)........................................7, 9

*Grynberg v. Bar S Servs., Inc.*,
527 F. App'x 736 (10th Cir. 2013)........................................ 5

*Inception Mining, Inc. v. Danzig Ltd.*,
311 F.Supp.3d 1265 (D. Utah 2018)........................................................................ 6

*Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*,
No. CIVIL 2:02-CV-562, 2008 WL 2673925 (D. Utah July 7, 2008).................................. 5

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)................................................................................................ 4

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)........................................................................................... 4

*Medical Realty Assoc., LLC v. D.A. Dodd, Inc.*,
928 N.E.2d 871 (Ind. Ct. App. 2010)........................................................................ 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).................................................................................................. 4

*National American Ins. Co.*, 362 F. 3d 1288, 1292 (10th Cir. 2004)....................................... 10

*Owner-Operator Independent Drivers Ass'n v. C.R. England, Inc.*,
325 F.Supp.2d 1252 (D. Utah 2004)........................................................................ 5

*P&P Indus, Inc. v. Sutter Corp*,
179 F.3d 861 (10th Cir. 1999).........................................................................5, 7, 8

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
762 F.3d 1139 (10th Cir. 2014)........................................................................5, 8, 10

*Seaborn v. Larry H. Miller Mercedes Benz*,
No. 2:19-CV-941, 2020 WL 1550789 (D. Utah Apr. 1, 2020)............................................. 8

*Strong v. Geringer*,
No. 2:15-CV-00837, 2016 WL 4926175 (D. Utah Sep. 15, 2016)....................................... 8

*Williams v. Orentlicher*,
939 N.E.2d 663 (Ind. Ct. App. 2011)........................................................................ 6

**Statutes**

9 United States Code
§ 1.......................................................................................................................... 4
§ 2.......................................................................................................................... 4
§ 4.......................................................................................................................... 4

Federal Arbitration Act, 9 U.S.C. §§ 1-14...........................................................1, 4, 5

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 ("FAA"), and because the parties entered into valid and enforceable written arbitration agreements, which govern the resolution of all claims Plaintiffs assert, Defendants First American Title Insurance Company ("First American") and Kirsten Parkin ("Parkin," and together with First American, the "FA Defendants") move the Court to compel individual arbitrations of all claims asserted against the FA Defendants in the Third Amended Complaint filed by Plaintiffs on June 15, 2020 (ECF 173, the "TAC"). In support of this motion, the FA Defendants state the following:

**INTRODUCTION**

The TAC is a belated attempt to add what Plaintiffs perceive as deeper pockets to a case filed well over one year ago, and for torts allegedly committed by others. Plaintiffs' strategy appears to be to sue everyone and anyone they believe was somehow connected to certain real estate transactions—now adding a title company and its employee—regardless of how haphazard and discombobulated their path. Although Plaintiffs have settled, agreed to arbitrate, or gone back-and-forth on dispositive motions with various defendants since this case began, they have now filed the TAC in an oddly-timed attempt to bring the FA Defendants into their sixteen-month-old case.[1] Ignoring Plaintiffs' conduct in filing the TAC solely for the purposes of this motion, Plaintiffs are required to arbitrate their claims against the FA Defendants.

---

[1] Plaintiffs have settled or withdrawn their claims against certain defendants (ECF 94), and have *already* stipulated to arbitrate their claims against the Rockwell parties at the center of their allegations (ECF 136). It is important for the Court to know that although the TAC is the first complaint to actually assert claims against the FA Defendants, First American was mentioned, in substantively identical ways, in every prior complaint filed by Plaintiffs; Plaintiffs have always known about First American's role in the transactions at issue but *chose* not to assert claims against the FA Defendants until now. *Compare* TAC ¶¶ 2, 134, 302–303, 351–352 *with* ECF 2 ¶¶ 77, 84, 211–212, 255–256 *and* ECF 4 ¶¶ 77, 84, 215–216, 260–261 *and* ECF 94 ¶¶ 125, 133, 276–277, 325–326. Plaintiffs have offered no explanation for their behavior, and their motion to amend misleadingly suggested that the FA Defendants had already been involved in the case as parties. *See* ECF 169-2 at 3 of 93 (redline of caption incorrectly showing FA defendants

**FACTS**

Plaintiffs are individuals, trustees, and companies that each purchased Tenant-in-Common ("TIC") interests in a real estate development located in Carmel, Indiana (the "Carmel Property"). TAC ¶ 9. Each Plaintiff's TIC interest was sold to it by Rockwell Indianapolis LLC ("Rockwell Indianapolis") pursuant to a Purchase and Sale Agreement ("PSA"). *Id.* ¶ 312; Parkin Decl. Exs. K–S. First American issued Rockwell Indianapolis a standard Owner's Policy of Title Insurance for the Carmel Property (the "Policy") (Parkin Decl. Ex. A). The Policy was amended through individual endorsements to add each Plaintiff as an "Insured" in an Amount of Insurance equal to their proportionate share of ownership interest as set forth in their respective PSAs. TAC ¶ 315 (Rockwell Indianapolis "agrees to pay for an endorsement to the [Policy] insuring Buyer in the amount of the Purchase Price"); Parkin Decl. Exs. K-S ¶¶ 1–2 (showing the Purchase Price is the amount paid for each Plaintiff's TIC interest); *id.* Exs. B-J (Endorsements). The Policy, as thus endorsed, formed an insurance contract between First American and each Plaintiff. The Policy contains a broad arbitration provision:

> **14. ARBITRATION**
>
> Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. …

as already parties) & ¶¶ 77-78 (redline not showing the FA Defendants being added as parties, but rather as having been named as parties previously).

Parkin Decl. Ex. A ¶ 14; *see also id*. Exs. B-J (Endorsements).

The Policy defines the "Amount of Insurance" as "[t]he amount stated in Schedule A, as may be increased or decreased by endorsement to this policy." *Id*. Ex. A ¶ 1(a). The amount originally stated in Schedule A was $6,260,000. *Id*. Each endorsement provided that each Plaintiff would be insured in an amount equal to that Plaintiff's TIC Purchase Price. *Id*. Exs. B-J, TAC ¶ 315. Each Endorsement also states that "it does not […] increase the amount of insurance." *Id.* As a result, and as set forth below, the Amount of Insurance for each Plaintiff is less than $2,000,000. *See* Appendix 1 Percentage Chart.

For example, Plaintiff Rosa DiTucci purchased a 12.45% TIC interest from Rockwell Indianapolis. Parkin Decl. Ex. K ¶ 2. Ms. DiTucci's Endorsement accordingly added her as an Insured to the Policy for the same 12.45% interest she held in the Carmel Property, for a total Amount of Insurance equaling $779,370. Parkin Decl. Ex. B; App. 1. Each and every other Plaintiff's Amount of Insurance is likewise less than the $2 million threshold for mandatory arbitration contained in the Policy. Appendix 1 Percentage Chart.

The Policy also contains a choice of law provision stating that "the court […] shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court […] apply its conflicts of law principles to determine the applicable law." Parkin Decl. Ex. A ¶ 17. Here that means that Indiana law applies, because the Carmel Property is in Indiana.

## ARGUMENT

### I. THE FEDERAL ARBITRATION ACT GOVERNS THIS MOTION, STRONGLY FAVORS ARBITRATION, AND REQUIRES THAT ARBITRATION AGREEMENTS BE "RIGOROUSLY" ENFORCED

The FAA governs transactions "affecting" interstate commerce, and state and federal courts must enforce the FAA. 9 U.S.C. §§ 1-2; *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). Real estate transactions, such as those alleged in Plaintiffs' complaints, have a substantial effect on interstate commerce and thus are subject to the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995). The FAA controls motions to compel arbitration regardless of what law governs the making of the contract itself. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). The FAA permits parties to seek an order directing that arbitration "proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" Moses *H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).

The FAA applies to all written arbitration agreements "involving commerce," 9 U.S.C. § 2, and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131–32 (10th Cir. 2004). The FAA reflects a "liberal federal policy favoring arbitration agreements," and declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. The FAA also requires courts "'rigorously' to 'enforce arbitration agreements according to their terms[.]'" Epic *Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S.

228, 233 (2013) (ordering arbitration). Courts must compel arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

## II. THE STANDARD FOR COMPELLING ARBITRATION

Determining whether a dispute is subject to arbitration involves considering whether (1) there is a valid arbitration agreement and (2) the particular dispute falls within the scope of that agreement. *See id.* at 649. The FAA "leaves no place for the exercise of discretion" if there is a valid, applicable agreement, and courts must "rigorously enforce" arbitration agreements according to their terms. *See Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014); *Byrd*, 470 U.S. at 217–18. Any doubt regarding whether claims are arbitrable must be resolved in favor of arbitration, particularly where the arbitration provision is broad in scope. *See P&P Indus, Inc. v. Sutter Corp*, 179 F.3d 861, 866 (10th Cir. 1999); *Owner-Operator Independent Drivers Ass'n v. C.R. England, Inc.*, 325 F.Supp.2d 1252, 1257 (D. Utah 2004).

### A. Plaintiffs Agreed to Individual Arbitrations

Plaintiffs concede that they entered into endorsements of the Policy, TAC ¶ 315, and are bound by these judicial admissions, *see Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (allegation in complaint is conclusively binding admission); *Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*, No. CIVIL 2:02-CV-562, 2008 WL 2673925, at *12 (D. Utah July 7, 2008) (plaintiffs' judicial admission of being party to agreement with arbitration clause is binding and "[a]s a result of their judicial admission, Plaintiffs cannot now avoid the 'conditions, covenants and obligations' of the [agreement] including its arbitration provision").

For example, Plaintiffs allege that "Pursuant to Section 4 [of each Purchase and Sale Agreement], Rockwell Indianapolis agreed "to pay for an endorsement to the standard coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price." TAC ¶¶ 312–315. Each Plaintiff thus agreed to be added by and subject to an endorsement amending and incorporating the Policy, which contains a broad agreement to arbitrate disputes. The FA Defendants may compel each Plaintiff to arbitrate because the Amount of Insurance at issue is less than $2,000,000 for each Plaintiff. Parkin Decl. Ex. A ¶ 14; Appendix 1 Percentage Chart.

**B. <u>Ms. Parkin Can Compel Arbitration</u>**

Who may enforce an arbitration provision is governed by state law relating to contracts in general. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (whether a non-signatory can be bound by or compel arbitration under an arbitration agreement is governed by state law). Therefore, the Court must apply the law of the jurisdiction where the Land is located, Indiana, to determine who may enforce the Policy's arbitration provision.

Indiana law allows a nonsignatory to compel arbitration based on a contractual arbitration provision. *See Doe 1 v. Carmel Operator, LLC*, 144 N.E.3d 743, 757 (Ind. Ct. App. 2020) ("a nonsignatory to an agreement may bind a signatory to an arbitration clause under certain circumstances, including under a theory of equitable estoppel") (internal quotations omitted)); *see also Williams v. Orentlicher*, 939 N.E.2d 663, 670 (Ind. Ct. App. 2011) ("when the nonsignatory concedes arbitrability on a contract issue, [federal] courts have routinely held the signatory to be bound by its arbitration clause"); *Inception Mining, Inc. v. Danzig Ltd.*, 311 F.Supp.3d 1265, (D. Utah 2018) ("a nonsignatory agent may compel a signatory to arbitrate").

Equitable estoppel allows a nonsignatory to compel arbitration when the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract containing the arbitration clause. *See German Am. Fin. Advisors & Tr. Co. v. Reed*, 969 N.E.2d 621, 627 (Ind. Ct. App. 2012). That is precisely what Plaintiffs do here. Plaintiffs repeatedly group alleged misconduct by Ms. Parkin and First American together throughout the TAC. For example, Plaintiffs allege that "Kirstin (sic) Parkin and FATCO immediately disbursed all invested funds to their co-conspirators" and that "Parkin and FATCO facilitated the deception of Plaintiffs." TAC ¶¶ 2, 14. These allegations stem from the conduct of Ms. Parkin as an employee of First American and thus permit Ms. Parkin to compel arbitration. *See German Am. Fin. Advisors & Tr. Co. v. Reed*, 969 N.E.2d at 627 (Reed was required to arbitrate claims against nonsignatory where those claims stemmed from conduct of the employee of the signatory and the contractual relationship between the signatories to the contract). Furthermore, First American itself can compel Plaintiffs to arbitrate their claims against Ms. Parkin. *See Medical Realty Assoc., LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 875 (Ind. Ct. App. 2010) (signatory defendant was permitted to require signatory plaintiff to arbitrate claim against nonsignatory where arbitration provision used "broad sweeping phrases such as 'any claims' and 'all claims' " and did not specifically exclude the claim against the nonsignatory).

## III. PLAINTIFFS' CLAIMS ARE ARBITRABLE

### A. The Arbitration Agreements Encompass Plaintiffs' Claims

There is a presumption of arbitrability, and any "doubts should be resolved in favor of coverage." *AT& T Techs.*, 475 U.S. at 650; *P&P Indus, Inc.*, 179 F.3d 861 at 866 (10th Cir. 1999).

In determining whether a dispute falls within the scope of an arbitration provision, a court must first classify the particular arbitration provision as broad or narrow. The Policy requires arbitration of "any controversy or claim between the Company and Insured arising out of or relating to this policy […] or to any controversy or claim arising out of this transaction [.]" Parkin Decl. Ex. A ¶ 14. This broad language means what it says. *See P & P Indus.*, 179 F.3d at 871; *Sanchez*, 762 F.3d at 1146–47 (collecting cases). When an arbitration provision is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Sanchez*, 762 F.3d at 1146. That presumption applies here and mandates that the Court compel Plaintiffs to arbitrate their claims against the FA Defendants.

**B. Individual Arbitration Has Been Ordered On the Claims Alleged Against the FA Defendants Based on Similar Arbitration Agreements**

Plaintiffs have alleged a number of claims against the FA Defendants that arise under or relate to the Policy and the underlying transaction, notably negligence (Count Five), breach of fiduciary duty (Count Ten), unjust enrichment (Count Fifteen), civil conspiracy (Count Sixteen), and aiding and abetting state securities fraud (Count Seventeen). Courts routinely find these, and similar claims are within the scope of broad arbitration provisions like the one in the Policy. *See e.g.*, *Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-CV-941, 2020 WL 1550789 at *4 (D. Utah Apr. 1, 2020) (unjust enrichment, conversion, fraudulent misrepresentation claims subject to "broad" arbitration clause); *In re Cox*, 835 F.3d at 1202 (broad arbitration provision encompassed antitrust claim "even though it arises out of events that predated the agreement"); *Strong v. Geringer*, No. 2:15-CV-00837, 2016 WL 4926175 (D. Utah Sep. 15, 2016) (compelling arbitration of, *inter alia*, civil conspiracy, state securities fraud, breach of fiduciary duty, fraud, and negligent

misrepresentation claims). Because Plaintiffs' claims against the FA Defendants all "relate to" or "arise from" the Policy and the underlying TIC transactions, the claims must be arbitrated.

### C. Plaintiffs' Claims Must Be Individually Arbitrated

The arbitration provision in the Policy expressly requires each Plaintiff to arbitrate their claims individually. Parkin Decl. Ex. A ¶ 14. That language must be enforced as written. *See In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195, 1202 (10th Cir. 2016); *Baker v. Comcast Corporation*, No. 2:19-cv-00652, 2020 WL 3895411 at *3 (D. Utah Jul. 10, 2020).

## IV. PLAINTIFFS' CLAIMS ARE ALSO ARBITRABLE UNDER THE PSAS

There is also a valid arbitration provision in the PSAs. *See* Parkin Decl. Exs. K-S ¶ 9. As discussed above in section II.B, Indiana law allows a nonsignatory to compel arbitration based on a contractual arbitration provision, under equitable estoppel. *See Doe 1* at 757. Equitable estoppel allows nonsignatories (the FA Defendants) to compel arbitration when the signatory (Plaintiffs) alleges substantially interdependent and concerted misconduct by both the nonsignatories and one or more signatories to the contract containing the arbitration clause. *See Reed*, 969 N.E.2d at 627. Plaintiffs have alleged interdependent and concerted misconduct between the various defendants. *See* TAC ¶ 14 ("Parkin and FATCO's misconduct was done at the direction of Rockwell for the purpose of furthering the Defendants' conspiracy to defraud Plaintiffs […] Parkin and FATCO's overt acts in furtherance of the conspiracy substantially aided and assisted in Defendants' fraud. Indeed, Defendants' misappropriation of Plaintiffs' funds could not have occurred without the knowing participation of FATCO in the fraudulent scheme"). These allegations mean that the FA Defendants are entitled to enforce the Rockwell PSA arbitration provision.

The PSA arbitration provision is broad, stating "[a]ny dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association." Parkin Decl. Exs K-S ¶ 9. The presumption of arbitrability applies to the broad provision in the PSAs. *Sanchez*, 762 F.3d at 1146. Thus, Plaintiffs must arbitrate their claims on this independent basis in the event arbitration is not compelled under the Policy. Indeed, Plaintiffs have already stipulated to arbitrating their claims against the Rockwell parties. ECF 136.

## V. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION

When claims are subject to arbitration, courts usually dismiss them in favor of that remedy. *See, e.g., National American Ins. Co.*, 362 F. 3d 1288, 1292 (10th Cir. 2004); *Armiio v. Prudential Insurance Co. v. America*, 72 F. 3d 793, 796-97 (10th Cir. 1995). Because none of Plaintiffs' claims against the FA Defendants even conceivably fall outside the applicable arbitration provisions, those claims should be dismissed, and Plaintiffs should be compelled to arbitrate them.

## CONCLUSION

For all the foregoing reasons, the FA Defendants respectfully ask this Court to enter an order granting their motion to compel Plaintiffs to arbitrate their claims against the FA Defendants in individual arbitrations and dismissing those claims in favor of arbitration.

Respectfully submitted this 17th day of August 2020.

*/s Jeffrey C. Corey*
ERIK A. CHRISTIANSEN, USB # 7372
JEFFREY C. COREY, USB # 09938
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com

echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 768-6832
*douglas.henkin@dentons.com*
*(pro hac vice application pending)*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2020, a true and correct copy of the forgoing MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN was served on all counsel of record by electronically filing it through the Court's electronic filing system.

*/s/ Jeffrey C. Corey*