Wesley D. Felix (Utah Bar No. 6539)
Brenda E. Weinberg (Utah Bar No. 16187)
FELIX WEINBERG PLLC
68 South Main Street
Salt Lake City, Utah 84101
Tel: (801) 441-0439
wfelix@felixweinberg.com
bweinberg@felixweinberg.com
*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROSA DiTUCCI, an individual; STEVEN R. LaROZA, an individual; DEBRA A. LaROZA, an individual; BRUCE I. ROSE, an individual; MAUREEN A. ROSE, an individual; SANFORD ROBERTS, an individual; HELAINE B. ROBERTS, an individual; RUSSELL E. HERTRICH, an individual; FRED JACOB, an individual; EDWARD A. HENNESSEY, an individual; RUSSELL E. HERTRICH REVOCABLE TRUST; SANFORD ROBERTS REVOCABLE TRUST; HELAINE B. ROBERTS REVOCABLE TRUST; THE FRED JACOB LIVING TRUST; EDWARD A. HENNESSEY 2001 REVOCABLE LIVING TRUST; CAMAC, INC., a Kansas corporation; and BLUSH PROPERTY, LLC., a Florida limited liability company;<br><br>*Plaintiffs*,<br><br>vs.<br><br>CHRISTOPHER J. ASHBY, an individual; JOHN D. HAMRICK, an individual; JORDAN S. NELSON, an individual; SCOTT W. BEYNON, an individual; WILLIAM BOWSER, an individual; SCOTT RUTHERFORD, an individual; | **OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Case No. 2:19-cv-00277<br><br>The Honorable Tina Campbell |

1

| | |
|---|---|
| ROCKWELL DEBT FREE PROPERTIES, INC., a Utah Corporation; ROCKWELL TIC, INC., a Utah Corporation; NOAH CORPORATION, a Utah corporation; EDMUND AND WHEELER, a New Hampshire corporation; ROCKWELL INDIANAPOLIS, LLC, a Utah limited liability company; GABRIEL MANAGEMENT CORPORATION, a Utah corporation; KIRSTEN PARKIN, an individual; FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation; JOHN DOES I-X, and ROE CORPORATIONS I-X,<br><br>    *Defendants*. | |

Plaintiffs Rosa DiTucci, et al., through counsel, file this memorandum in opposition to Defendants First American Title Insurance Company and Kirsten Parkin's Motion to Compel Arbitration.

## ARGUMENT

Questions regarding the applicability of an arbitration clause to a particular dispute are governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Only when a court has determined that "the parties' arbitration agreement [i]s validly formed and that it cover[s] the dispute in question and [i]s legally enforceable," should arbitration be compelled. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 300 (2010).

Defendants First American Title Insurance Company ("FATCO") and Kirsten Parkin ("Parkin") (collectively, "Defendants") fail to tell the Court that none of the Plaintiffs received the title policy which contains the arbitration provision Defendants now seek to enforce. FATCO and Parkin attempt to enforce an arbitration provision which no Plaintiff saw prior to the filing of

2

this lawsuit. The Court should deny Defendants' Motion to Compel Arbitration because 1) Plaintiffs did not agree to arbitrate, and a contract between Plaintiffs, FATCO, and/or Parkin was never formed; 2) As non-signatories, Plaintiffs cannot be compelled to arbitrate; 3) the title policy is over $2 million, and the arbitration provision requires agreement to arbitrate policies in excess of $2 million; 4) the arbitration agreement is unconscionable; 5) FATCO is not a third-party beneficiary; and 6) Plaintiffs' claims are not arbitrable.

### I. Plaintiffs did not agree to arbitrate, and a contract between Plaintiffs, FATCO, and/or Parkin was never formed.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). When determining whether parties have agreed to arbitrate a dispute, we apply state law interpretation principles governing contracts. *Anonymous, M.D. v. Hendricks*, 994 N.E.2d 324, 329 (Ind. Ct. App. 2013) (citing *Blimpie Intern., Inc. v. Choi*, 822 N.E.2d 1091, 1094 (Ind. Ct. App. 2005)). A valid contract requires offer, acceptance, and a meeting of the minds. *Flynn v. AerChem, Inc.*, 102 F. Supp.2d 1055, 1059 (S.D. Ind. 2000) (citing *Bain v. Board of Trustees of Starke Mem'l Hosp.*, 550 N.E.2d 106, 110 (Ind. Ct. App.1990)); *Homer v. J.M. Burman*, 743 N.E.2d 1144, 1146-47 (Ind. Ct. App. 2001).

"Under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement." *Progressive Se. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 88 N.E.3d 188, 197 (Ind. Ct. App. 2017) (citing *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind. Ct. App. 1995)). "Then, the movant must demonstrate that the disputed matter is the type of claim the parties agreed to arbitrate." *Id*. (citing *Brumley v. Commonwealth Business College*, 945 N.E.2d 770, 776).

FATCO and Parkin's arguments rely on a misrepresentation to the Court: that "Plaintiffs concede that they entered into endorsements of the Policy." Motion at 5 (citing TAC ¶ 315). The TAC says no such thing. Instead, Paragraph 315 states that "[p]ursuant to Section 4 [of the PSA], Rockwell Indianapolis agreed 'to pay for an endorsement to the standard coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price.'" TAC ¶ 315. Nothing in this provision evidences Plaintiffs' agreement to arbitration or any provision of the Policy and, indeed, endorsements were provided unilaterally to the Plaintiffs long after they executed PSAs.

There was no offer, acceptance, or consideration, and Plaintiffs are not signatories to the Policy. Thus, no contract was ever formed that would bind Plaintiffs to the arbitration clause. There is no evidence that Defendants sent the Policy or the endorsements to Plaintiffs prior to issuance or that Plaintiffs reviewed, understood, or agreed to arbitrate. In fact, the Policy containing the arbitration clause was never sent to any of the Plaintiffs *at any time*. DiTucci Declaration, ¶¶ 4-5, attached hereto as Exhibit 1.

Defendants sent letters to Plaintiffs after each transaction along with the CLTA Form 107.9 Endorsement and their respective recorded Warranty Deed, but the Policy was never sent to Plaintiffs. Letter to DiTucci Dated March 29, 2019, attached hereto as Exhibit 2. Notably, there is no arbitration provision or reference to an arbitration provision in the endorsements. Dkt. Nos. 186-3 through 186-12. In many cases, like DiTucci, Plaintiffs did not receive the letters with the Endorsement enclosed until long after the closing date. In addition, DiTucci did not receive her letter until she had retained counsel, learned that her deed had not been recorded, and requested the missing deed from Parkin and FATCO. DiTucci Declaration, ¶ 6, Ex. 1. Steven R. Laroza and Debra A. Laroza executed the PSA on September 4, 2018, and the date of their

endorsement is April 17, 2019, just six days before filing this lawsuit. Dkt. Nos. 186-5; 186-14. The LaRozas' and other Plaintiffs' filing of this lawsuit certainly evidences in an act of disaffirmation of the arbitration clause. *See Gilman v. Walters*, 61 F. Supp. 3d 794, 804 (S.D. Ind. 2014) (The mere fact that non-signatory expressly object to arbitration here evidences that they had not assumed the obligation to arbitrate.). Plaintiff Linda Camp even requested that Parkin send her the Policy – *twice* – but that request went unanswered; she never received it. March 31 and April 7, 2019 Emails, attached hereto as Exhibit 3. Plaintiff Rosa DiTucci similarly asked for the Policy twice and only received it after she had already filed this lawsuit. June 20, 2019 Emails, attached hereto as Exhibit 4.

Finally, there is no consideration. Each PSA explicitly states that Rockwell Indianapolis, LLC agreed to pay for an endorsement to the Policy, and Plaintiffs' Final Settlement Statements reflect that. DiTucci Final Settlement Statement, attached hereto as Exhibit 5. In fact, Plaintiffs' Final Settlement Statements show that Plaintiffs paid nothing to FATCO or Parkin – the endorsement fee, escrow fee, and recording fee were all paid by Rockwell Indianapolis, LLC. *Id*.

## II. As non-signatories, Plaintiffs cannot be compelled to arbitrate.

"Whether an arbitration agreement may be enforced against nonsignatories, and under what circumstances, is an issue controlled by state law." *Wilson v. Willis*, 426 S.C. 326, 827 S.E.2d 167, 173-74 (S.C. 2019). "An arbitration agreement generally cannot bind a non-signatory…. [A]rbitration agreements generally are enforceable against non-signatories only in a handful of limited circumstances, depending on the applicable state law. These limited exceptions are: (1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (simplified). "[A] party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit. Therefore, the general rule is that non-signatories are not bound to arbitration agreements. We will enforce an arbitration agreement against a non-signatory if the party seeking to compel arbitration can show that an exception to this general rule applies." *Id*. at 1060.

Defendants recognize that Parkin is a non-signatory but gloss over the fact that none of the Plaintiffs are signatories. The question of whether an arbitration agreement binds a non-signatory often arises when the non-signatory is an additional insured and did not agree to the terms of an insurance policy. Courts will typically only hold the non-signatory to the arbitration clause when the non-signatory seeks coverage under the policy; the non-signatory is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 688 (7th Cir. 2005) (citing *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 778). "But caselaw consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration." *Id*. Plaintiffs have not sought to enforce any rights under the Policy, so estoppel does not apply.

Defendants make no argument that any of the other exceptions apply to Plaintiffs as non-signatories. The argument that Parkin may demand arbitration under a theory of equitable estoppel similarly fails because Plaintiffs are not signatories. When the non-signatory concedes arbitrability on a contract issue, the signatory is bound by its arbitration clause. Equity does not compel a non-signatory to arbitrate when it is the signatory seeking to compel arbitration, however. *Williams v. Orentlicher*, 939 N.E.2d 663, 670-71 (Ind. Ct. App. 2010). The non-signatory is the party that must make the request, because it is the party not bound by the

6

contract. *Id*. at 671. It then follows that equitable estoppel does not allow a non-signatory to compel another non-signatory to arbitrate.

Finally, FATCO argues that it can compel Plaintiffs to arbitrate against Parkin. It is unclear, however, if FATCO means that it can compel Plaintiffs to arbitrate individually against FATCO *and* individually against Parkin, doubling the number of arbitrations. FATCO has offered no law that gives it power to force another party to submit to an arbitration to which it will not be a party.

The case FATCO cites in support did not specifically exclude the claim against the non-signatory, where here, in contrast, the Policy provides that "[e]xcept as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons." Granting FATCO the power to join or consolidate Parkin's claims yet prohibit Plaintiffs from joining or consolidating their claims with one another is inequitable. If the Court orders Plaintiffs to arbitrate against Parkin under this theory, the parties and claims should be joined and consolidated.

### III.     The title policy is over $2 million.

Defendants argue that they can compel arbitration because the Policy is less than $2 million under the provision that states that "[a]ll arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured." Policy, Dkt. No. 188-1 at 14, Section 14. Defendants do themselves no favor by again misrepresenting the arbitration provisions of the Policy to the Court. Defendants represent that "[e]ach endorsement provided that each Plaintiff would be insured in an amount equal to that Plaintiff's TIC Purchase Price." Motion at 3. The Endorsements say nothing of the sort and make no reference to the Amount of Insurance. Ms. Parkin's statements in Paragraphs 7-8 that CLTA

Form 107.9 changes the Amount of Policy are blatant misrepresentations. As a commercial escrow officer with over 26 years of experience at FATCO, she should be well aware that CLTA Form 107.9 serves only to add individuals as named insureds. Other endorsements, such as CLTA 107.2, an exemplar of which is attached hereto as Exhibit 6, change the Amount of Policy. FATCO did not issue a separate policy to each Plaintiff, and FATCO has provided nothing to show that the Amount of Insurance is anything other than $6,260,000.00.

Instead, the Policy provides that "[a]ll arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured." Policy, Dkt. No. 188-1 at 14, Section 14. Pursuant to the plain language of the Policy, FATCO cannot compel arbitration without agreement from Plaintiffs, so the Motion should be denied.

### IV.     The arbitration agreement is invalid because it is unconscionable.

"[A]rbitration agreements, like any other contract, are subject to general contract law and defenses and can be challenged 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Walker v. DaimlerChrysler Corp.*, 856 N.E.2d at 99, n. 2. (quoting 9 U.S.C. § 2). "For example, agreements to arbitrate could still be attacked as being unconscionable or as having resulted from fraud or unequal bargaining power." *Id*.

"[P]rocedural unconscionability involves the manner and process by which the terms become part of the contract." *DiMizio v. Romo*, 756 N.E.2d 1018, 1024 (Ind. Ct. App. 2001) (citing *Hahn v. Ford Motor Co*., 434 N.E.2d 943, 951 (Ind. Ct. App. 1982)). "The purpose of the unconscionability doctrine is to prevent unfair surprise and oppression." *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir. 1984). Here there was obviously unequal bargaining

8

power because Plaintiffs were never given the Endorsements until months after their purchases and were never given the Policy at all.

Furthermore, the Endorsements neither reference nor make mention of an arbitration clause. The Title Commitment, erroneously attached to the Motion as Exhibit A, shows that Defendants knew how to properly give notice of an arbitration clause. The Title Commitment references the arbitration clause explicitly and in detail:

> NOTE: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

Dkt. No. 186-3 at 20; 30; 40. The Title Commitment was issued to Rockwell Indianapolis, LLC, and Plaintiffs never saw, reviewed, or received it. DiTucci Declaration, ¶ 3, Ex. 1. In contrast, the Endorsements say nothing about an arbitration clause.

It is unclear when FATCO believes Plaintiffs entered into the agreements, and there are two possibilities: 1) the date of each PSA, or 2) the date of each Endorsement. Both of these dates are problematic. If it is the date of the PSA, then the Policy did not yet exist when three of the Plaintiffs, Hennessey, Hertrich, and CAMAC, signed the PSA. If it is the date of each endorsement, then it makes even more clear that there was no meeting of the minds with regard to the arbitration provision.

In *Maxon Corp. v. Tyler Pipe Industries, Inc.*, a broad indemnification clause constituted a material alteration to the contract as a matter of law and was unconscionable because it was obscurely placed on the invoice and the purchaser did not expressly agree to it. 497 N.E.2d 570,

9

576. Indiana also recognizes that a clause in fine print containing no title heading amounts to procedural unconscionability. *Weaver v. American Oil Co.*, 276 N.E.2d 144, 147 (1971).

The circumstances here are even more unconscionable, as the arbitration clause nowhere on the endorsement, and Plaintiffs were not given the Policy; Plaintiffs therefore did not agree to it.  Moreover, here the Plaintiffs would be required to do more than give up their right to a jury. The arbitration clause asserted by FATCO requires arbitration by a Title Insurance Association arbitrator. The plaintiffs would be compelled to an adjudication by, in effect, an employee of the Defendants. This result is plainly unconscionable when the Plaintiffs had never seen the asserted arbitration provision until it was provided to them in this litigation.

**V.     The PSAs are not a basis for FATCO to compel arbitration.**

Plaintiffs incorporate the arguments and legal support above regarding non-signatories to arbitration clauses. The PSAs do not contain "broad sweeping phrases such as 'any claims' and 'all claims'" such as were the basis of the *Doe* court for concluding that the arbitration clause applied to non-signatories. The arbitration clause in the PSA provides that only "dispute[s] *between the parties*" to the PSA be submitted to arbitration. Policy, Dkt. No. 188-1 at 14, Section 14. (emphasis added). The rationale behind allowing non-signatories to compel arbitration under the doctrine of judicial estoppel is for efficiency so that the claims would come together in one arbitration. Here, that rationale would be frustrated because the Rockwell parties will be in the advanced stages of arbitration by the time this Motion is heard, with a scheduled trial date of December 7, 2020.  The sole purpose of the motion to compel is to cause delay and to increase dramatically the economic burden on the Plaintiffs in attempting to recover the monies stolen from them.

### VI. Plaintiffs' claims are not arbitrable.

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id*. "In order to determine whether a claim is arbitrable under the FAA, we evaluate the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains." *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1197 (10th Cir. 2009). The Tenth Circuit applies a three-part test when determining whether an issue falls within the scope of an arbitration clause:

> First, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview*. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Cummings v. Fedex Ground*, 404 F.3d 1258, 1261 (simplified).

Many courts have concluded that an arbitration clause applying to disputes "arising under" or "in connection with" the agreement constitutes a broad arbitration clause. *See, e.g., Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (explaining that arbitration clause stating "all disputes or controversies arising under or in connection with this Agreement . . . will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause"

11

(omission in original)); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (stating that arbitration clause covering "[a]ny controversy, claim, or breach arising out of or relating to this Agreement . . . is a 'broad' one"); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2nd Cir. 1995) (explaining that phrase "'[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

Defendants represent that "[t]he Policy requires arbitration of 'any controversy or claim between the Company and Insured arising out of or relating to this policy […] or to any controversy or claim arising out of this transaction[.]'" Motion at 8. Defendants omit a key term of the arbitration clause, however. That sentence reads:

> Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters *may include*, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy.

Policy, Dkt. No. 188-1 at 14, Section 14. (emphasis added). The omission is significant because the language is permissive, not obligatory. "Shall" appears multiple times in this clause, so the use of "may" must be read to exclude claims that fall outside of arising out of or relating to the Policy, the transaction giving rise to the Policy, and service in connection with its issuance. The language further limits arbitrable matters to any controversy or claim *between the Company and the Insured*. Taken together with the restriction on joinder and consolidation of claims of other persons, this was meant to narrow the scope of the arbitration clause to exclude matters not between the Company and the Insured. And, as stated above, policies in excess of $2 million, such as this one, are specifically excluded from arbitration if one party does not agree.

12

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Compel Arbitration and deny their request to dismiss the claims against them. If the Court grants Defendants Motion to Compel Arbitration under the doctrine of equitable estoppel, it should order Defendants, Plaintiffs, and all claims be joined and consolidated together in one arbitration.

Dated August 31, 2020.

                                                Felix Weinberg PLLC

                                                /s/ *Brenda E. Weinberg*
                                                Brenda E. Weinberg
                                                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of August, 2020, I caused to be served via email a true and correct copy of the attached and foregoing **OPPOSITION TO FATCO'S MOTION TO COMPEL ARBITRATION** upon the following:

William Bowser
55 West South Temple, Unit 404
Salt Lake City, UT 84101
w.bowser1985@gmail.com

Gabriel Management Corporation
55 West South Temple, Unit 404
Salt Lake City, UT 84101
w.bowser1985@gmail.com

Jonathan O. Hafen
Chad S. Pehrson
Royce B. Covington
Sara M. Nielson
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
jhafen@parrbrown.com
cpehrson@parrbrown.com
snielson@parrbrown.com
*Attorneys for Rockwell TIC, Inc., Rockwell Debt Free Properties, Inc., Christopher Ashby, Jordan Nelson, and Scott Beynon*

Scott D. Sweeney
WILSON ELSER MOSKOWITZ ELDEMAN & DICKER LLP
1225 17th Street, Suite 2750
Denver, CO 80202
scott.sweeney@wilsonelser.com
*Attorney for John Hamrick, Chris Brown, and Edmund & Wheeler*

David L. Mortensen
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
david.mortensen@stoel.com
*Attorney for Scott Rutherford*

Erik A. Christiansen
Jeffrey C. Corey
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
EChristiansen@parsonsbehle.com
JCorey@parsonsbehle.com
*Attorneys for First American Title Insurance Company and Kirsten Parkin*

Sonia R. Martin
Douglas W. Henkin
Joel D. Siegel
Cody N. Wood
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
sonia.martin@dentons.com
douglas.henkin@dentons.com
joel.siegel@dentons.com
cody.n.wood@dentons.com
*Attorneys for First American Title Insurance Company and Kirsten Parkin*

*/s/ Brenda E. Weinberg*