IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| ROSA DiTUCCI, et al.,<br><br>Plaintiffs,<br>vs.<br><br>CHRISTOPHER ASHBY, et al.,<br><br>Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:19-cv-277-TC-JCB |

On March 1, 2021, the court issued an order granting in part and denying in part the motion to compel arbitration that Defendants First American Title Insurance Company ("First American") and Kirsten Parkin (collectively "FA Defendants") filed. (See Order & Mem. Decision, ECF No. 234 ("March 2021 Order").) In that order, the court held that First American has the right to compel arbitration but Ms. Parkin, a First American employee and escrow agent, does not. The court then asked the parties to file supplemental briefs addressing whether the court should stay claims against Ms. Parkin while Plaintiffs arbitrate their claims against First American.

The FA Defendants filed a supplemental brief as well as a motion to reconsider the March 2021 Order,[1] reasserting their belief that the court should find that Ms. Parkin, as well as First American, has a right to compel arbitration. In the alternative, they ask the court to stay

---

[1] The FA Defendants request oral argument, but the court has concluded that a hearing would not materially assist it with resolving the issues.

1

Plaintiffs' litigation of claims against Ms. Parkin pending resolution of the arbitration between Plaintiffs and First American.  Plaintiffs, on the other hand, assert the court should allow them to litigate their claims against Ms. Parkin at the same time they arbitrate their claims against First American.

Although the court declines to modify its March 2021 Order, it concludes, for the reasons set forth below, that the possibility of preclusive effect and considerations of judicial efficiency warrant a stay of Plaintiffs' litigation against Ms. Parkin.

## BACKGROUND

In the March 2021 Order, the court found that Plaintiffs were bound by an arbitration clause set forth in documents for a title insurance policy that each Plaintiff purchased from First American in connection with their purchase of interests in a property in Indiana (the "Carmel Property").  The Policy's agreement to arbitrate reads as follows:

> **14. ARBITRATION**
>
> Either the Company [First American] or the Insured [a Plaintiff] may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons.  Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy.  All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. ...

(Policy ¶ 14, ECF No. 188-1.)

Ms. Parkin, First American's employee and escrow agent, worked on issuance of each plaintiff's title policy (collectively, the Policy), although she was not a party to the Policy itself.  Still, she and First American rely on the Policy's arbitration clause to assert their respective

rights to compel Plaintiffs to arbitrate.

The FA Defendants, in their original motion to compel, asserted that Indiana law[2] required Plaintiffs to arbitrate not only against signatory First American but also against Ms. Parkin even though she is not a party to the agreement. The court agreed only in part, denying Ms. Parkin's motion to compel based on a 2021 intervening decision by the Indiana Supreme Court. First American and Ms. Parkin now complain they should have had an opportunity to address the intervening decision before the court ruled on the motion to compel.

## GROUNDS FOR RECONSIDERATION

The Tenth Circuit has recognized three grounds that may warrant reconsideration of a decision: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of the Paraclete v. John Does I-XVI, 204 F.3d 1005, 1012 (10th Cir. 2000). The court noted, however, that

> a motion for reconsideration [is an] inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. Absent extraordinary circumstances, … the basis for the second motion must not have been available at the time the first motion was filed.

Id. The FA Defendants rely on the first and third grounds for reconsideration.

They first assert that the Indiana Supreme Court's January 2021 decision in Doe 1 v. Carmel Operator, LLC, 160 N.E.3d 518 (Ind. 2021), which the court and parties refer to as "Doe II," requires the court to reconsider, and reverse, its decision that Plaintiffs are not required to

---

[2] The Policy contains a choice of law provision, which applies to the arbitration agreement as well: "[T]he court […] shall apply the law of the jurisdiction where the Land is located … to interpret and enforce the terms of this policy. In neither case shall the court […] apply its conflicts of law principles to determine the applicable law." (Policy ¶ 17(a).) In this case, Indiana law applies to the arbitration issues because the Carmel Property is located in Indiana.

arbitrate their claims against Ms. Parkin. According to the FA Defendants, Doe II announced an intervening change in controlling law justifying reconsideration of their arguments that Ms. Parkin may compel arbitration based on the traditional elements of equitable estoppel and privity. The court disagrees. Doe II did not announce a new rule for either theory. Moreover, the FA Defendants could have, but did not, raise those issues in their original motion to compel. Accordingly, as discussed in more detail below, the court will not consider those arguments now.

First American alternatively contends the court erred when it overlooked its argument that Medical Realty Associates LLC v. D.A. Dodd, Inc., 928 N.E.2d 871 (Ind. Ct. App. 2010), gives First American an independent right to compel Plaintiffs to arbitrate their claims against Ms. Parkin, a non-signatory. The court agrees to address the merits that argument. Still, as discussed below, Medical Realty does not support First American's position.

1. *Doe II* and Equitable Estoppel

The FA Defendants assert the court erred when it found that Doe II did not support a finding that Ms. Parkin is allowed to compel arbitration based on the traditional principles of equitable estoppel. They further assert they have the right to raise this argument now because the Indiana Supreme Court addressed the issue for the first time in Doe II.

Doe II overruled a decision (upon which Ms. Parkin relied) that applied an "alternative" theory of equitable estoppel to allow a non-signatory to compel signatories to arbitrate their claims against her. This court addressed Doe II in its order denying Ms. Parkin's motion to compel arbitration on that basis. (See Mar. 1, 2021 Order at 9–11.)

Now the FA Defendants argue that Doe II provided a new, previously unavailable, rule applying traditional equitable estoppel principles in the context of a non-signatory's motion to compel signatories to arbitrate: "[T]he fact that the basic elements of estoppel have remained

unchanged for decades does not mean they were to be applied by non-signatories seeking to compel arbitration in Indiana before Doe II was decided." (FA Defs.' Reply Mem. in Further Support of Mot. to Reconsider at 3, ECF No. 255.)

The Indiana Supreme Court did not announce a previously unavailable ground to argue that a signatory is estopped from avoiding arbitration of its claims against a non-signatory. The court simply found the record did not support a finding of equitable estoppel. See Doe II, 160 N.E.3d at 523–24. It discussed the traditional elements of equitable estoppel that courts have applied for years (lack of knowledge, reliance, and prejudicial effect). And it did not apply those elements in a novel or unanticipated situation. See also, e.g., German Am. Fin. Advisors & Trust Co. v. Reed, 969 N.E.2d 621, 627–28 (Ind. Ct. App. 2012) (Barnes, J., dissenting) (applying traditional elements of equitable estoppel to conclude that non-signatory to arbitration agreement could not enforce arbitration agreement against signatory)[3]; MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947–48 (11th Cir. 1999) (applying traditional equitable estoppel doctrine to determine that non-signatory had right to compel signatory to arbitrate).

The FA Defendants could have anticipated and subsequently raised that argument in their motion to compel, but they did not. The court will not reconsider its decision that "nothing in the record suggests that Ms. Parkin would be able to establish the three elements of equitable estoppel." (March 2021 Order at 11.)

### 2. *Doe II* and Privity

The FA Defendants contend for the first time that Ms. Parkin can compel arbitration under the Policy because she is in privity with First American and, accordingly, entitled to the

---

[3] The Doe II court reversed Reed to the extent it relied on the non-traditional, alternative-estoppel theory. 160 N.E.3d at 524.

rights First American has under the Policy. In support, they cite to Doe II for the proposition that "a non-signatory may compel arbitration if they are in privity with a signatory to the underlying agreement." (Mot. to (I) Reconsider Order Denying Mot. to Compel Arbitration of Pls.' Claims Against Kirsten Parkin or (II) Stay All Claims Against Kirsten Parkin Pending Resolution of Pls.' Claims Against First Am. at 6, ECF No. 247.)

The argument was available to them at the time they filed their motion to compel. They cite to the newly issued Doe II decision, but that case did not announce a new rule regarding privity. In fact, the Doe II court cited to a 1996 decision to support its statement that "[o]rdinarily, only contracting parties, or those in privity with them, have rights under an arbitration agreement." Doe II, 160 N.E.3d at 522 (citing OEC-Diasonics, Inc. v. Major, 674 N.E.2d 1312 (Ind. 1996)). "[A] motion for reconsideration [is an] inappropriate vehicle[] to reargue an issue previously addressed by the court <u>when the motion merely advances new arguments</u>, or supporting facts which were available at the time of the original motion. <u>Absent extraordinary circumstances, … the basis for the second motion must not have been available at the time the first motion was filed</u>." Paraclete, 204 F.3d at 1012 (emphasis added). Because they could have raised this issue in their original motion to compel arbitration, and because they have not shown extraordinary circumstances excusing their failure to do so, the court will not consider it.

### 3. Right to Compel Arbitration Under *Medical Realty*

In First American's motion to compel, it asserted it has an independent right to compel Plaintiffs to arbitrate their claims against Ms. Parkin. The FA Defendants presented an abbreviated argument based on Medical Realty Associates LLC v. D.A. Dodd, Inc., 928 N.E.2d 871 (Ind. Ct. App. 2010):

> First American itself can compel Plaintiffs to arbitrate their claims against Ms. Parkin. See Medical Realty Assoc., LLC v. D.A. Dodd, Inc., 928 N.E.2d 871, 875 (Ind. Ct. App. 2010) (signatory defendant was permitted to require signatory plaintiff to arbitrate claim against nonsignatory where arbitration provision used broad sweeping phrases such as "any claims" and "all claims" and did not specifically exclude the claim against the nonsignatory).

(FA Defs.' Mot. to Compel Arbitration at 7, ECF No. 186.) Because the court overlooked that brief argument, it agrees to consider it now. Still, as explained below, the court concludes that Medical Realty does not support First American's position.

The decision in Medical Realty, which was based on specific language in a contract, is distinguishable. The case concerned mechanic's lien foreclosure actions by a general contractor (Hasse) and a plumbing/HVAC subcontractor (Dodd) against the owner of a hospital (Medical Realty Associates, or MRA). The dispute arose after MRA withheld payment to the general contractor (Hasse), who in turn withheld payment to the plumbing/HVAC subcontractor (Dodd). Both Dodd and Hasse filed mechanic's liens against the hospital and independently sued MRA to foreclose on those liens. Dodd also filed a complaint against Hasse. The court consolidated their complaints.

The subcontract[4] required Dodd to notify Hasse if Dodd filed a mechanic's lien against the hospital. See Med. Realty, 928 N.E.2d at 873 (requiring Dodd to notify Hasse "of all claims 'against the contract, its surety, the Architect, or the Owner.'"). The subcontract also contained an arbitration clause, which provided that "any of [Dodd's] claims asserted in a timely notice [to Hasse] and any claims asserted by [Hasse] shall be resolved by binding arbitration[.]" Id. at 875.

Hasse invoked the subcontract's arbitration clause to resolve its dispute with Dodd. MRA also moved to compel arbitration against Dodd based on that clause even though it was not

---

[4] The case involved two subcontracts, but the provisions were the same, so for purposes of simplicity, the court refers to them as one contract.

7

a party to the subcontract. Hasse and MRA sought a single arbitration combining all of Dodd's claims, and in support they pointed to the arbitration clause's broad language, including the fact that its terms did not expressly exclude mechanic's liens.

The Medical Realty court ordered arbitration of Dodd's claims against MRA. It reasoned, based on its interpretation of the contract, that the language of the arbitration clause and the notice provision, "work[ed] in conjunction" and gave Hasse "authority" over any claim Dodd filed in connection with the hospital construction. Id. That meant Hasse had authority to elect arbitration of those claims against a non-signatory. In other words, the subcontract allowed a signatory (Hasse) to compel the other signatory (Dodd) to arbitrate its claims against a non-signatory (MRA).

First American analogizes its situation to that in Medical Realty. According to First American, it has authority, as signatory to the broad arbitration clause, to compel signatory Plaintiffs to litigate their claims against Ms. Parkin, a non-signatory. It specifically emphasizes the following statement by the Medical Realty court: "Further, the notice and arbitration provisions use broad sweeping phrases such as 'any claims' and 'all claims,' and mechanic's liens have nowhere been excluded from these provisions." Id.

The situation here is not analogous because the nature of the contract at issue is different. Although the court in Medical Realty addressed a broad arbitration clause, the court based its decision first and foremost on the specific language in the subcontract, which concerned not only the arbitration clause but also the notice provision incorporating mechanic's lien claims against the owner of the hospital. And the court's language about the "broad sweeping phrases" of the subcontract's arbitration provisions was not an independent basis for its holding. See also Doe II, 160 N.E.3d at 523 n.1 (noting in 2021 decision that Indiana courts of appeals have "not firmly

8

resolved" the issue of whether an arbitration agreement's "sweeping language of 'any and all claims' should cover" a dispute between a signatory and a non-signatory who is not a third-party beneficiary, and, for that reason, the Court said, "we leave it for another day").

Here, the Policy does not contain additional language having the same effect the subcontract's notice provision did in Medical Realty. The wrinkle that made a difference in Medical Realty—that is, the notice provision—does not have an analogue here. In fact, the Policy's arbitration clause arguably forecloses the result reached in Medical Realty: "Except as provided in the [Title Insurance Arbitration Rules of the American Land Title Association], there shall be no joinder or consolidation with claims or controversies of other persons." (Policy ¶ 14, ECF No. 188-1.) Given the distinguishing facts in Medical Realty, the decision does not support First American's claimed right to compel Plaintiffs to arbitrate their claims against Ms. Parkin.

## STAY OF CLAIMS PENDING ARBITRATION

Given that the court has reiterated its decision denying Ms. Parkin's motion to compel, the court must decide whether to stay Plaintiffs' claims against her.

The court has discretion to determine whether to stay nonarbitrable claims while the arbitrable claims are resolved. Moses H. Cone Memorial Hosp. Mercury Constr. Co., 460 U.S. 1, 20 n.23 (1983). When determining whether to issue a stay, the court must consider whether the arbitrable claims—those against First American—would have a preclusive effect on the nonarbitrable claims—those against Ms. Parkin. Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 785 (10th Cir. 1998). "If there will be such a preclusive effect, especially if the arbitrable claims predominate over the nonarbitrable claims, then the district court should consider whether to stay the federal-court litigation of the nonarbitrable claims pending the arbitration outcome on the arbitrable claims." Id.

Plaintiffs' claims against First American are intertwined with their claims against Ms. Parkin. Plaintiffs assert the same causes of action against both defendants: Negligence, Breach of Fiduciary Duty, Unjust Enrichment, Civil Conspiracy, and Materially Aiding State-Law Securities Fraud. (Third Am. Compl., ECF No. 173.) Those claims arise out of the same events (sale of the TIC interests to Plaintiffs and issuance of the Title Policy). Plaintiffs also allege that "[a]t all relevant times, Parkin was an agent of FATCO and acted on its behalf."[5] (Id. ¶ 466.) The arbitrable claims share a large number of facts and issues of law with the nonarbitrable claims, and resolution of the claims against First American, or resolution of factual and legal issues underlying those claims, likely would have some preclusive effect on the claims being litigated in this judicial forum.

Under the collateral estoppel doctrine, "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970) (emphasis added), quoted in United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002). "Collateral estoppel will bar a claim if four elements are met: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Moss v. Kopp, 559 F.3d 1155, 1161 (10th Cir. 2009).

---

[5] Despite this allegation, the court will not evaluate the lengthy complaint's allegations to determine whether Plaintiffs have adequately pled causes of action against Ms. Parkin that give rise to individual liability.

Ms. Parkin need not be a party to the arbitration in order to assert the doctrine of collateral estoppel against Plaintiffs. "[C]ollateral estoppel merely requires that the party against whom the doctrine is invoked be a party in the prior case." Id. at 1161 n.8. It would likely be enough if Plaintiffs litigated an issue during the arbitration identical to an issue raised in the court proceeding against Ms. Parkin.

Plaintiffs note that while their claims against First American will be governed by Indiana law (a result of the Policy's "choice of law" provision), they will be arguing Utah law when they litigate their common law claims against Ms. Parkin in this forum. They point to substantive differences between Indiana common law elements and the Utah common law elements. This, they say, means resolution of their claims against First American in arbitration will not have a preclusive effect on their claims against Ms. Parkin.

For all the differences between the Utah and Indiana tort claims, there is some overlap. Even if, as Plaintiffs say, Utah's treatment of civil conspiracy and breach of fiduciary duty differs materially from Indiana's,[6] Plaintiffs do not suggest that Utah and Indiana treat unjust enrichment and negligence claims differently, and they admit their state-law securities fraud claims will be similar.

At a minimum, the result of one proceeding may preclude Plaintiffs from re-litigating certain ultimate facts in the other proceeding. As this court noted in another case involving arbitrable and nonarbitrable claims, "[i]t is difficult to imagine that arbitration of the claims against [one defendant] would not have some preclusive effect on the claims against the Non-

---

[6] Plaintiffs say Utah recognizes civil conspiracy as a distinct cause of action whereas Indiana does not. (See Pls.' Supplemental Briefing re: Stay of Litigation Pending Arbitration at 6–7, ECF No. 253.) They also point to differences between a fiduciary duty claim in Utah and one in Indiana. (Id.)

arbitrating Defendants since they are based in the same facts and allegations." Belnap v. IASIS Healthcare Corp., No. 2:14-cv-00086-DN, 2017 WL 4351472, at *3 (D. Utah Sept. 29, 2017) (emphasis in original).

Given the likelihood of preclusive effects, the court must determine whether a stay is appropriate in light of judicial efficiency concerns. See Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1518 (10th Cir. 1995) ("Staying [claims against a non-arbitrating party] is based upon considerations of judicial efficiency."). Factors to consider include whether the stay would promote judicial economy, avoid possible inconsistent results, and impose undue hardship on or prejudice the Plaintiffs. Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Inc., 760 F. Supp. 1036, 1045 (E.D.N.Y. 1991), cited in Coors Brewing, 51 F.3d at 1518; Belnap, 2017 WL 4351472 at *3.

The court finds that the factors weigh in favor of a stay. Allowing the actions to proceed side by side would waste the court's and the parties' resources. Because the arbitrable and nonarbitrable claims arise out of the same series of events, many of the witnesses and much of the documentary evidence, for both sides, will likely be the same. A stay would avoid the scenario in which two different adjudicating bodies are simultaneously reviewing similar evidence, resolving similar factual issues, and deciding similar questions of law. Also, if the court proceeds with the nonarbitrable claims at this time, it risks reaching results inconsistent with the arbitration's results.

Plaintiffs contend a stay will substantially harm them, whereas, they say, the FA Defendants will not be harmed absent a stay. Under the circumstances, the court disagrees. Regardless of the forum, Plaintiffs will have a full opportunity to litigate the issues. Resolution of common issues means the parties can more efficiently use this court's resources after

12

arbitration concludes.  As for Plaintiffs' contention that a stay will hinder their ability to litigate their conspiracy claim against other defendants, they do not elaborate.  (See Pls.' Supplemental Briefing Re: Stay of Litigation Pending Arbitration at 11, ECF No. 253.)  In addition, although Plaintiffs offer scenarios where they may be "forced to abandon their nonarbitrable claims" (id.), their strategic concern does not outweigh concerns about waste of resources and inconsistent results.

## **ORDER**

For the reasons set forth above, the FA Defendants' Motion to (I) Reconsider Order Denying Motion to Compel Arbitration of Plaintiffs' Claims Against Kirsten Parkin or (II) Stay All Claims Against Kirsten Parkin Pending Resolution of Plaintiffs' Claims Against First American (ECF No. 247) is GRANTED IN PART AND DENIED IN PART.  The court declines to modify its order denying the FA Defendants' motion to compel arbitration, but it hereby STAYS all claims against Defendant Kirsten Parkin pending resolution of the arbitration between First American and the Plaintiffs.

DATED this 16th day of September, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge